*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PENNIE MARIE DAVIS,

          Plaintiff-Appellee,

v

JACKSON PUBLIC SCHOOLS,

          Defendant-Appellant.

UNPUBLISHED
July 2, 2020

No. 344203
Jackson Circuit Court
LC No. 16-000344-CZ

Before: STEPHENS, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Defendant, Jackson Public Schools, appeals as of right a judgment entered in favor of plaintiff, Pennie Marie Davis, following a jury trial in this action for unlawful retaliation under the Whistleblowers' Protection Act (WPA), MCL 13.361 *et seq.* For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Plaintiff, a teacher at Jackson High School (JHS), was assaulted by a student, MH, in her high school art class on October 12, 2015. Plaintiff reported the assault to the police and obtained a personal protection order (PPO) against the student. Plaintiff filed this action for violation of the WPA, alleging that defendant unlawfully retaliated against her for reporting the assault to the police and obtaining the PPO.

At the time of the assault, plaintiff had been teaching in defendant's school system for 29 years. Before the assault, she had received exemplary evaluations for her performance, and she had received an evaluation rating of "highly effective" for the immediately preceding school year. At the time of the assault, plaintiff was curriculum chair of the art department at JHS. In the fall of 2015, MH was in plaintiff's Beginning Art 2D class. Plaintiff described MH as a tenth-grade student who was 6 feet tall, 250 pounds, and a football player. According to plaintiff, she had ongoing behavioral issues with MH in the class which became worse as the year progressed. According to plaintiff, she attempted to reach out to other school administrators, as well as MH's mother, but was not successful in dealing with his behavior.

On October 12, 2015, when MH entered plaintiff's classroom, she overheard him say that "he wanted to hurt and beat and something like kill the teacher at that point." After plaintiff instructed the students about their assignment for the day, plaintiff overheard MH say "that he wants to, you know, hurt and threatens [sic] me." According to plaintiff, she calmly put her hand on MH's desk and told him he would need to stop speaking that way or he would have to leave the classroom. MH refused to stop, so plaintiff asked him to go to the office. At that point, MH said some "choice words" and refused to go to the office. According to plaintiff, when she threatened to call security, MH stated, "I'm not going" and swung his closed fist into plaintiff's hand in a manner that plaintiff described as "forceful." When plaintiff's initial attempts to seek assistance from school administrators regarding this incident were unsuccessful, she reported the matter to the police. Plaintiff also independently sought medical attention and obtained a PPO.

Defendant placed plaintiff on paid administrative leave so that it could complete an investigation. School administrators and the police interviewed students who were present in plaintiff's classroom at the time of the altercation, and they reported that the physical contact between plaintiff and MH appeared to be accidental. When plaintiff returned to work, a plan was devised whereby plaintiff and MH avoided each other to comply with the terms of the PPO. According to plaintiff, however, she observed MH unsupervised near her classroom, so she filed a motion to modify the PPO because she felt unsafe. Shortly thereafter, but before any modification of the PPO, school administrators transferred plaintiff to Parkside Middle School ("Parkside") to teach sixth grade art. Parkside was a school that focused on the International Baccalaureate (IB) curriculum, and plaintiff asserts that she had not received instruction or training regarding the IB curriculum before the transfer, or in the time period following her transfer. Plaintiff also lost her position as curriculum chair of the art department. While at Parkside, plaintiff was told that her performance was substandard and she was placed on an Individual Development Plan (IDP). She received a poor evaluation at the end of the 2015-2016 school year.

Plaintiff filed this lawsuit alleging that defendant retaliated against her, in violation of the WPA, for reporting the matter involving MH to the police. After defendant unsuccessfully moved for summary disposition, the trial court held an eight-day jury trial. The jury found that defendant violated the WPA and awarded plaintiff $10,290 in economic damages, $2,240 in future economic damages, past noneconomic damages of $150,382, and future noneconomic damages of $225,573. The trial court entered a judgment in favor of plaintiff consistent with the jury's verdict. Defendant filed a motion for a new trial or remittitur, which the trial court denied. Defendant thereafter filed this appeal.

## II. DEFENDANT'S MOTION FOR SUMMARY DISPOSITION

Defendant first argues that the trial court erred by denying its motion for summary disposition. We disagree.

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *Wurtz v Beecher Metro Dist*, 495 Mich 242, 249; 848 NW2d 121 (2014). Although defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10), defendant submitted evidence in support of its motion, and defendant argues on appeal that the submitted evidence showed that it was entitled to summary disposition. Therefore, it is appropriate to review defendant's motion under MCR 2.116(C)(10).

A motion under MCR 2.116(C)(10), . . . tests the factual sufficiency of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted in original). [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019).]

Plaintiff alleged that defendant retaliated against her for contacting the police and obtaining a PPO, by harassing, ridiculing, and demeaning her, transferring her to an inferior position at Parkside, and subjecting her to a hostile work environment. MCL 15.362 provides:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

A prima facie case of retaliation is established under the WPA if the plaintiff can demonstrate that (1) the plaintiff engaged in an activity protected by the WPA, (2) the plaintiff was discharged or otherwise discriminated against by the plaintiff's employer, and (3) "a causal connection exists between the protected activity and the discharge or adverse employment action." *West v Gen Motors Corp*, 469 Mich 177, 183-184; 665 NW2d 468 (2003). On appeal, defendant does not challenge the first two requirements, but argues that plaintiff did not make the requisite showing of causation. Defendant observes that "a temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action." *Id*. at 186. As explained in *West*,

[s]omething more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed. . . . Plaintiff must show something more than merely a coincidence in time between protected activity and adverse employment action. [*Id*. (citations omitted).]

In *Debano-Griffin v Lake Co*, 493 Mich 167, 171; 828 NW2d 634 (2013), our Supreme Court, in addressing the causation element of a WPA claim, observed that WPA claims are similar "to other antiretaliation employment claims brought under employment discrimination statutes prohibiting various discriminatory animuses," and accordingly, stated that such a claim should be considered in accordance with the same standards of proof applicable to those analogous claims. *Id*. at 175-176. Therefore, WPA claims are also subject to the burden-shifting framework

established in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). *Debano-Griffin*, 493 Mich at 176. As explained by our Supreme Court:

> Absent direct evidence of retaliation, a plaintiff must rely on indirect evidence of his or her employer's unlawful motivations to show that a causal link exists between the whistleblowing act and the employer's adverse employment action. See [*Hazle v Ford Motor Co*, 464 Mich 456, 462-463; 628 NW2d 515 (2001)]. A plaintiff may " 'present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful [retaliation].' " *Id.* at 462, quoting *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 537-538; 620 NW2d 836 (2001)]. Once a plaintiff establishes a prima facie case, "a presumption of [retaliation] arises" because an employer's adverse action is "more likely than not based on the consideration of impermissible factors"—for example, here, plaintiff's protected activity under the WPA—if the employer cannot otherwise justify the adverse employment action. *Hazle*, 464 Mich at 463 (citations and quotation marks omitted). [*Debano-Griffin*, 493 Mich at 176.]

A plaintiff presents direct evidence of retaliation when the evidence is such that, if believed, it requires a conclusion that an unlawful discriminatory animus was "at least a motivating factor in the employer's actions." *Rivera v SVRC Indus, Inc*, 327 Mich App 446, 457; 934 NW2d 286 (2019). However, when a plaintiff relies on circumstantial evidence of retaliation to establish the prima facie case, the plaintiff must utilize the burden-shifting framework of *McDonnell Douglas*. *Id*. at 458.

However, an employer may still be entitled to summary disposition if it provides a legitimate reason for its employment action, and the plaintiff cannot establish that a reasonable fact-finder would nonetheless conclude that the plaintiff's protected activity "was a 'motivating factor' in the employer's [adverse] action." *Id*. To avoid summary disposition, then, the plaintiff must present evidence raising a genuine issue of material fact concerning whether the employer's reason for taking the action it did was merely pretextual for otherwise unlawful retaliation. *Id*.

> A plaintiff can establish that a defendant's articulated legitimate . . . reasons are pretexts (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. [*McNeill-Marks v MidMich Med Ctr-Gratiot*, 316 Mich App 1, 18; 891 NW2d 528 (2016), quoting *Feick v Monroe Co*, 229 Mich App 335, 343; 582 NW2d 207 (1998).]

This Court will not second-guess the employer's decision to determine if it was " 'wise, shrewd, prudent, or competent.' " *McNeill*, 316 Mich App at 18, quoting *Hazle*, 464 Mich at 476. Instead, the pivotal inquiry is whether the employer's decision was motivated by discriminatory animus. *McNeill*, 316 Mich App at 18.

## A. A PRIMA FACIE CASE UNDER THE WPA

Defendant, citing *West*, argues that the trial court erred by concluding that plaintiff presented evidence to establish a causal connection between her protected activity and the resulting adverse employment actions. Noting that a plaintiff is required to show more than a simple coincidence in time between an adverse employment action and the protected activity, defendant relies on the deposition testimony of Jeffrey Beal, defendant's superintendent, who explained that the reason plaintiff was transferred to Parkside was to comply with the terms of the modified PPO, and to ensure plaintiff's safety at her place of employment. According to defendant, it had to make a "business decision designed to separate a student and teacher," and if it had intended to retaliate unlawfully against plaintiff, it could have done so when she first went to the police and obtained the PPO after the October 12, 2015 assault by MH. Defendant also observes that plaintiff was free to transfer back to JHS after MH was no longer attending JHS, which defendant claims further undermines plaintiff's position that she was a victim of unlawful retaliation.

Initially, with respect to causation, we agree with the trial court that plaintiff demonstrated that "a causal connection exists between the protected activity and the discharge or adverse employment action." Plaintiff presented evidence from which a reasonable fact-finder could conclude that there was a causal nexus between her contact with defendant's high-level administrators in relation to her report of MH's assault to the police and the subsequent employment actions that were taken. *West*, 469 Mich at 184. Plaintiff testified that the day after the assault, Benjamin Pack, defendant's assistant superintendent of human resources, and Beal both visited her in her classroom and "demanded" that she take the bandage off her hand. When plaintiff refused because the medical professionals who examined her the night before had instructed her not to take it off, she was berated by Beal and Pack, who were very upset with her. According to plaintiff, it was clear from Beal's and Pack's conduct and statements that they did not believe that MH had assaulted her.

According to the affidavit of Amy Gish, plaintiff's union representative, she was present on October 15, 2015 when plaintiff met with Beal and Pack. Gish swore that Pack suggested that plaintiff could have hit herself with a hammer in an effort to cause the injury to her hand. Gish recalled that, during the meeting, Pack and Beal were "visibly angry" and they spoke to plaintiff in a loud, confrontational, and accusatory manner. According to Gish, it was apparent that both Pack and Beal were angry with plaintiff for going to the police and obtaining the PPO. They placed plaintiff on administrative leave.

On November 4, 2015, plaintiff filed a motion to modify the PPO, alleging that MH's behavior at JHS caused her to continue to feel unsafe. Plaintiff also informed the principal of JHS, Barbara Baird-Pauli, as well as Gish, in a written correspondence dated November 5, 2015, that she was still concerned about her safety because MH was wandering around the school unsupervised and she believed he had banged on her classroom door. On November 13, 2015, plaintiff was notified that she was being transferred to Parkside. According to plaintiff, at a meeting on November 16, 2015, Pack was very angry with her, apparently for seeking to modify the PPO, and he told her, "We do not go to the police here." Plaintiff further testified that "if I didn't go to the police and kept everything in school then Ben Pack said he wouldn't have moved me but since I went to the police then he was going to move me [to a different school]."

Gish averred in an affidavit that the decision to transfer plaintiff to Parkside immediately followed plaintiff's action of seeking to modify the PPO, and took place after school officials were made aware of the proposed modification. Plaintiff testified that Parkside is a school with an IB curriculum, which she had never taught, and she did not receive the necessary training before the transfer, or in the period following the transfer. Within a short time after arriving at Parkside, plaintiff was deemed a "failing teacher," and during an IDP meeting the Parkside school principal, Jeremy Patterson, told her and Gish in a negative and accusatory tone, "I know what happened at the high school." In the school year preceding the assault by MH, plaintiff had received a rating of "highly effective," and she had received similarly favorable evaluations throughout her 29-year career with defendant. However, in her evaluation for the 2015-2016 school year, she received an "ineffective" evaluation.

The evidence, viewed in the light most favorable to plaintiff, showed that after plaintiff reported the assault by MH to the police and obtained a PPO, she was repeatedly treated in a highly unprofessional manner by Pack and Beal, who voiced their displeasure that she decided to report the matter to the police rather than deal with defendant's administration. Within a month of the October 12, 2015 assault, and a mere matter of days after plaintiff moved to modify the initial PPO, she was transferred to a different school and assigned to teach a specialized curriculum for which she had not received appropriate training. Shortly after arriving at Parkside, the school principal classified plaintiff as a "failing teacher," and then subsequently gave plaintiff an unfavorable evaluation for the 2015-2016 school year. Before the 2015-2016 school year, plaintiff had received exemplary evaluations. Beyond the temporal proximity of these employment actions to plaintiff's decisions to contact the police and obtain a PPO, plaintiff also presented evidence that Pack accused her of (1) fabricating her own her injury, and (2) having a "beef" against MH. In addition, plaintiff testified that Pack told her that if she had not gone to the police and had kept matters within the school, she would not have been transferred. Thus, plaintiff presented evidence of (1) behavior and conduct by high-level school administrators indicating that they were upset that plaintiff reported an assault to the police and obtained a PPO, and (2) the involvement of those administrators in the decision to transfer plaintiff to Parkside.

In sum, plaintiff's evidence supported an inference that defendant's employment actions were taken because it was upset about her decisions to report the assault to the police and to pursue the PPO within the court system. The evidence was sufficient to demonstrate that defendant "took adverse employment action *because of* plaintiff's protected activity." *West*, 469 Mich at 185. Thus, the trial court properly determined that there were genuine issues of fact with respect to the causation element of a WPA claim.

## B. PRETEXT

Defendant also argues that it was entitled to summary disposition because it transferred plaintiff to Parkside for the legitimate reasons of ensuring her safety and to comply with the PPO, and because plaintiff failed to otherwise raise a genuine issue of material fact that these reasons were a mere pretext for unlawful retaliation. We disagree.

Once plaintiff established a prima facie case, a rebuttable presumption arose that defendant's adverse employment actions were more likely than not based on an impermissible consideration, such as plaintiff's protected activity under the WPA. *Debano-Griffin*, 493 Mich at

176. However, once defendant put forth a legitimate reason for its employment action, plaintiff was required to demonstrate that her protected activity "was a 'motivating' factor'" for defendant's employment decision. *Id*.

Plaintiff testified that Pack informed her that if she had not gone to the police and kept all matters related to the assault by MH "in school," then she would not have been transferred to Parkside. Pack, who plaintiff described as "angry" during this conversation on November 13, 2015, also told plaintiff "we do not go to the police here." Gish averred in her affidavit that plaintiff's transfer to Parkside, which offered an IB curriculum, immediately followed plaintiff's decision to seek to modify the PPO. Beal acknowledged that neither he nor Pack attempted to meet with plaintiff to determine if her safety concerns could be alleviated without necessitating a transfer to Parkside.

Moreover, plaintiff pointed out that the decision to transfer her was made on November 13, 2015, before the PPO was actually modified on November 19, 2015. Plaintiff also pointed out that the original PPO likewise prohibited MH from appearing at plaintiff's workplace, but that defendant did not transfer her as a result of that language; instead defendant devised a plan in which plaintiff and MH would avoid each other at JHS.

This evidence challenged the credibility of defendant's proffered justification for the transfer, namely, that a transfer was necessary to comply with the PPO and to ensure plaintiff's safety. The evidence that defendant failed to meet with plaintiff to discuss her safety concerns before the transfer, and the evidence of Pack's statements to plaintiff that she would not have been transferred if she had kept the matter "in school" and had not gone to the police, placed the credibility of the proffered justification for the transfer squarely at issue, and created a genuine issue of material fact whether this reasoning was actually legitimate. Accordingly, the trial court properly denied defendant's motion for summary disposition.

## III. DEFENDANT'S CLAIMS OF INSTRUCTIONAL ERROR

Defendant next argues that the trial court erroneously instructed the jury on the causation element of a WPA claim when it instructed the jury in accordance with the model civil jury instruction, M Civ JI 107.03. Defendant contends that the model instruction is inconsistent with United States Supreme Court precedent, and thus, does not accurately state the causation standard for a WPA violation. We review the trial court's jury instructions de novo to determine whether the instructions, examined in their entirety, adequately presented each party's theory of the case and accurately stated the prevailing law. *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 326 Mich App 684, 707; 930 NW2d 416 (2019).

Model Civil Jury Instructions must be given in each action if they (1) are applicable; (2) accurately state the applicable law, and (3) are requested by a party. MCR 2.512(D)(2). The trial court instructed the jury consistent with M Civ JI 107.03 (Whistleblowers' Protection Act: Causation), which provides:

> When I use the term "because of" I mean that protected activity must be one of the motives or reasons defendant [discharged / or / threatened / or / discriminated against] the plaintiff. Protected activity does not have to be the only reason, or even

the main reason, but it does have to be one of the reasons that made a difference in defendant's decision to [discharge / or / threaten / or / discriminate against] the plaintiff.

At trial, defendant requested that the trial court, in lieu of giving M Civ JI 107.03, instead instruct the jury in the following manner:

> When I use the term "because of" I mean that [p]laintiff would not have been retaliated against *but for* her "protected activity."

Defendant argued that this requested instruction was appropriate in light of recent United States Supreme Court authority imposing a "but-for" standard of causation in the context of federal employment discrimination and retaliation statutes. The trial court disagreed and instructed the jury in accordance with M Civ JI 107.03.

On appeal, defendant notes that MCL 15.362 prohibits an employer from taking adverse employment action against an employee "because" the employee "reports . . . a violation . . . of a law[.]" Defendant argues that the term "because" imposes a "but-for" standard of causation, and to the extent that the model civil jury instruction is consistent with such a standard, the trial court erred by relying on it to instruct the jury. In support of its argument, defendant relies on *Univ of Texas Southwestern Med Ctr v Nassar*, 570 US 338, 342-343; 133 S Ct 2517; 186 L Ed 2d 503 (2013), in which the Supreme Court was asked to consider the causation standard applicable to claims of unlawful employer retaliation under Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq*. The respondent in *Nassar* was a physician of Middle Eastern descent who alleged that he was unlawfully retaliated against in his employment after he complained about racial harassment by his supervisor. *Id*. at 344-345. The pertinent statutory provision at issue in *Nassar*, 42 USC 2000-3(a), provided, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

The *Nasser* Court looked to its earlier decision in *Gross v FBL Fin Servs, Inc*, 557 US 167; 129 S Ct 2343; 174 L Ed 2d 119 (2009), in which it interpreted "a separate but related statute," the Age Discrimination in Employment Act of 1967 (ADEA), 29 USC 623(a)(1). *Nassar*, 570 US 343. In *Gross*, the Supreme Court was presented with the question "whether the burden of persuasion ever shifts to the party defending an alleged mixed-motives discrimination claim brought under the ADEA." *Gross*, 557 US at 173. However, the Court determined that the ADEA did not allow for mixed-motives discrimination claims at all. In reaching this conclusion, the Court interpreted 29 USC 623(a)(1), which provides:

> It shall be unlawful for an employer -
>
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, *because of* such individual's age[.] [Emphasis added.]

Consulting the dictionary definition of "because of[,]" the Court concluded that "the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Gross*, 557 US at 176. The Court determined that:

under § 623(a)(1), the plaintiff retains the burden of persuasion to establish that age was the "but-for" cause of the employer's adverse action. [*Gross*, 557 US at 176-177.]

Therefore, the Court held that the burden of persuasion in an alleged mixed-motives case is the same heightened standard as in a disparate treatment claim, and that the plaintiff bore the burden of establishing, by a preponderance of the evidence, that age was the "but-for" cause of the employer's adverse employment decision. *Id*. at 178.

In *Nassar*, after observing that it had concluded in *Gross* that the ADEA, which did not have "any meaningful textual difference" from 42 USC 2000-(3)(a), "requires proof that the prohibited criterion was the but-for cause of the prohibited conduct[,]" the Court held that the logical conclusion was that Title VII retaliation claims likewise "require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Nassar*, 570 US at 343, 352. In reaching this conclusion, the Court noted that status-based discrimination on the basis of race, color, religion, sex, and national origin, addressed in 42 USC 2000e-2, was treated differently under amendments enacted in 1991:

So, in short, the 1991 Act substituted a new burden-shifting framework for the one endorsed by [*Price Waterhouse v Hopkins*, 490 US 228; 109 S Ct 1775; 104 S Ct 268 (1989)]. Under that new regime, a plaintiff could obtain declaratory relief, attorney's fees and costs, and some forms of injunctive relief based solely on proof that race, color, religion, sex, or nationality was a motivating factor in the employment action; but the employer's proof that it would still have taken the same employment action would save it from monetary damages and a reinstatement order. See *Gross*, 557 US at 178, n 5; see also *id*., at 175 n 2, 177, n 3. [*Nassar*, 570 US at 349.]

We acknowledge that the federal statutes at issue in *Gross* and *Nassar* contain language that mirrors that of § 2 of the WPA. And the Michigan Supreme Court has recognized that United States Supreme Court precedent is not controlling, but may be considered persuasive, regarding the interpretation of state law. In *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 283; 696 NW2d 646 (2005), our Supreme Court explained:

While federal precedent may often be useful as guidance in this Court's interpretation of laws with federal analogues, such precedent cannot be allowed to rewrite Michigan law. The persuasiveness of federal precedent can only be considered after the statutory differences between Michigan and federal law have been fully assessed, and, of course, even when this has been done and language in

state statutes is compared to similar language in federal statutes, federal precedent remains only as persuasive as the quality of its analysis.

See also *Sharp v Lansing*, 464 Mich 792, 802-803; 629 NW2d 873 (2001).

MCL 15.362 precludes an employer from taking adverse employment actions against an employee "*because* the employee . . . reports . . . a violation of a law[.]" Addressing how a plaintiff can establish a prima facie claim under MCL 15.362, our Supreme Court has held that the causation element requires a plaintiff to present evidence demonstrating that "a causal connection exists between the protected activity and the discharge or adverse employment action." *West*, 469 Mich at 184. The Michigan Supreme Court has also described the requisite showing as a "causal nexus" that must be made, *id*., and further clarified that a plaintiff must "show that his employer took adverse employment action *because of* [the] plaintiff's protected activity[.]" *Id*. at 185. Moreover, rather than interpreting MCL 15.362 in a manner that requires a "but-for" causation standard, the Michigan Supreme Court has held that a plaintiff must "demonstrate that the adverse employment action *was in some manner influenced by the protected activity*[.]" *West*, 469 Mich at 185 (emphasis added). Put another way, to establish a prima facie case under the WPA, a plaintiff must put forth evidence "from which a reasonable juror could conclude that any adverse employment action directed at [the] plaintiff *was related to* the [protected activity made by the] plaintiff." *Id*. at 187 (emphasis added). See also *Debano-Griffin*, 493 Mich at 175 (stating the "causal connection" requirement of a prima facie case under the WPA and recognizing that in showing that a claimed employment decision is mere pretext, the plaintiff must show that his or her protected activity under the WPA "was a motivating factor for the employer's adverse action") (citation and quotation marks omitted).

Whatever persuasive value *Gross* and *Nassar* may have toward recognizing a more precise "but-for" standard for WPA claims in Michigan, we are not at liberty to disregard our Supreme Court's clear and settled pronouncement of the causation standard applicable to a WPA claim, even if a "but-for" standard may seem more viable or consistent with the statutory language of MCL 15.362. In *Associated Builders & Contractors v Lansing*, 499 Mich 177, 191-192; 880 NW2d 765 (2016), our Supreme Court cautioned this Court from "anticipatorily ignor[ing]" decisions from the Michigan Supreme Court, even if more recent developments in the law have "undercut the foundation" on which a case has stood. The Supreme Court stated:

> The Court of Appeals is bound to follow decisions [from the Michigan Supreme Court] except where those decisions have clearly been overruled or superseded and is not authorized to anticipatorily ignore our decisions where it determines that the foundations of a Supreme Court decision have been undermined. [*Id*.]

Because the trial court instructed the jury on the causation element of a WPA claim in a manner consistent with Michigan Supreme Court precedent, which we are bound to follow, we are compelled to reject defendant's claim of instructional error.

## IV. DEFENDANT'S CLAIMS OF EVIDENTIARY ERROR

Defendant next argues that multiple evidentiary errors by trial court warrant reversal of the judgment for plaintiff. We disagree.

When an evidentiary issue is properly preserved, we review the trial court's decision to admit or exclude evidence for an abuse of discretion. *Nahshal v Fremont Ins Co*, 324 Mich App 696, 710; 922 NW2d 662 (2018). However, "preliminary legal determinations of admissibility are reviewed de novo." *Id*. (citation and quotation marks omitted). If an error is found, we must determine whether the error "was harmless error or reversible error under MRE 103(a)." *Id*. at 717.

> A trial court's error is harmless if, based on review of the entire record, it is more probable than not that the error was not outcome determinative; if the probability runs in the other direction, then it is reversible error. *Barnett v Hidalgo*, 478 Mich 151, 172; 732 NW2d 472 (2007); see also MCR 2.613(A)[1]; *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 157-158; 908 NW2d 319 (2017). [*Nahshal*, 324 Mich App at 717 (footnote added).]

See also *Augustine v Allstate Ins Co*, 292 Mich App 408, 424; 807 NW2d 77 (2011) (an evidentiary error will not require disturbing a judgment unless failure to do so is inconsistent with substantial justice). Where an evidentiary challenge was not properly preserved below, we review the issue to determine whether a plain error affected a party's substantial rights. *Hilgendorf v St John Hosp & Med Ctr Corp*, 245 Mich App 670, 700; 630 NW2d 356 (2001).

## A. POLICE REPORT

Defendant first argues that the trial court abused its discretion by refusing to admit the police report of Jackson Police Officer Scott Goings on the basis that it was inadmissible hearsay. Defendant argues that the police report was not hearsay because it was not offered to prove the truth of its contents, but to assist the jury in understanding defendant's motivations for and reasons why the administrators acted in the manner they did after plaintiff contacted the police and obtained a PPO.

Under MRE 801(c), hearsay "is a statement, other than the one made by the declarant while testifying at the trial . . . offered in evidence to prove the truth of the matter asserted." Unless otherwise provided by the rules of evidence, hearsay is not admissible. MRE 802. Generally, police reports are considered inadmissible hearsay. *Maiden v Rozwood*, 461 Mich 109, 125; 597 NW2d 817 (1999); *In re Forfeiture of a Quantity of Marijuana*, 291 Mich App 243, 254; 805 NW2d 217 (2011). But when evidence of out-of-court statements is offered to demonstrate the effect of the statements on the hearer, "then it is not offered for a hearsay purpose because its value

---

[1] MCR 2.613(A) provides:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, *unless refusal to take this action appears to the court inconsistent with substantial justice*. [Emphasis added.]

does not depend upon the truth of the statement." *People v Lee*, 391 Mich 618, 642; 218 NW2d 655 (1974).

Initially, we question defendant's assertion that it sought to admit the police report merely to show how its school administrators conducted themselves and interacted with plaintiff following her allegation of assault by MH, and not for the truth of its contents. Specifically, to the extent that defendant sought to rely on the police report to explain why administrators may not have taken plaintiff's allegations more seriously, or to illustrate the motivations of its administrators in the aftermath of plaintiff's allegations of assault, the relevancy of the evidence for this purpose would have been dependent upon the truth of the statements recounted in the police report because it was being offered to essentially explain defendant's determination that an assault did not occur. In particular, defendant sought to rely on the portions of the police report describing that tenth-grade principal Joe Zessin and Officer Goings interviewed students to show that the consensus among those who witnessed the interaction between MH and plaintiff was that MH had merely pushed plaintiff's hand away and an assault did not take place. Therefore, we agree with the trial court that defendant sought to admit the document for the truth of its contents, despite of defendant's protestations to the contrary. Accordingly, the trial court did not abuse its discretion by excluding the report as inadmissible hearsay.

Furthermore, even if the police report did not qualify as hearsay, any error in excluding the evidence was harmless. The alleged purpose of the police report was to explain why defendant acted in the manner it did following plaintiff's allegations of assault. However, defendant was able to present substantial other evidence on this subject during trial. Baird-Pauli testified that Zessin conducted interviews of the students present in the classroom at the time of the interaction between plaintiff and MH, and Baird-Pauli interviewed two of the students herself. According to Baird-Pauli, the consensus was that "any contact between [MH] and [plaintiff] was inadvertent." Baird-Pauli also testified that the students who were interviewed by Officer Goings gave the officer information consistent with what they had relayed to Zessin and Baird-Pauli. Moreover, during his testimony, Pack confirmed that he concluded, on the basis of the witness statements collected by Zessin, that "this would have been an issue that could have been addressed at the building administration level," rather than going to the police. Accordingly, because defendant was able to present other evidence of its understanding of the altercation between plaintiff and MH, any error in the trial court's exclusion of the police report did not affect defendant's substantial rights and this Court's failure to reverse on that basis would not be inconsistent with substantial justice. *Augustine*, 292 Mich App at 424. Thus, any error does not require reversal.

## B. TESTIMONY OF GISH

Defendant also asserts that the trial court abused its discretion by allowing Gish to testify regarding plaintiff's low evaluation score after discussing it with other union leaders across the state. Defendant argues that this allowed Gish to effectively compare plaintiff to hundreds of teachers around the state through inadmissible hearsay statements, under circumstances where it did not have the opportunity to cross-examine these other individuals. Defendant also challenges Gish's testimony that a student's complaint against plaintiff was not legitimate or believable, arguing that it was not able to counter this "highly prejudicial" evidence by producing its own witnesses, or cross-examining the students and teachers involved in the incident giving rise to the complaint.

-12-

The record discloses that defendant did not object to Gish's testimony that other teachers in Michigan did not receive evaluation ratings as low as plaintiff's rating. Although defendant asserts that it raised this issue in a motion in limine, that motion was directed at Gish's averments that she had not seen defendant's administrators treat an employee within defendant's district as rudely and unprofessionally as they treated plaintiff. Because defendant's appellate objection involves entirely different testimony and defendant did not object to that testimony at trial, this evidentiary claim is unpreserved. *Nahshal*, 324 Mich App at 709-710. Accordingly, our review is limited to plain error affecting defendant's substantial rights.

Defendant claims that Gish's testimony was improper because it was hearsay and because it was unable to present evidence that other teachers throughout the state who did not receive a score of one on their evaluation were not similarly situated to plaintiff. We note that in cases alleging employment discrimination, a plaintiff can "attempt to prove discrimination by showing that the plaintiff was treated unequally to a similarly situated employee who did not have the protected characteristic." *Hecht v Natl Heritage Acads, Inc*, 499 Mich 586, 607; 886 NW2d 135 (2016).

> An employer's differing treatment of employees who were similar to the plaintiff in all relevant respects, except for their race, can give rise to an inference of unlawful discrimination. In order for this type of "similarly situated" evidence alone to give rise to such an inference, however, our cases have held that the "comparable" employees must be "nearly identical" to the plaintiff in all relevant respects. [*Id*. at 608.]

Initially, defendant's contention that Gish's testimony amounted to inadmissible hearsay under MRE 802 is dubious, given that Gish's testimony was not offered to establish the truth of any out-of-court statement, but rather to demonstrate her knowledge of and familiarity with the evaluation process for teachers across Michigan. Gish only testified that she had not personally heard of a teacher receiving an evaluation score of one, not that a teacher had never received a score of one on an evaluation. Likewise, plaintiff was not attempting to establish that she was discriminated against by comparing herself to other teachers across Michigan, which would require a showing that other teachers were similarly situated to plaintiff in almost all respects. *Hecht*, 499 Mich at 608. Instead, plaintiff was simply eliciting from Gish that, in her experience in dealing with other school districts around the state, an overall score of one on an evaluation is rare. Accordingly, defendant's claim that Gish's testimony amounts to plain error affecting defendant's substantial rights is unavailing. *Hilgendorf v St John Hosp & Med Ctr Corp*, 245 Mich App 670, 700; 630 NW2d 356 (2001)

Defendant also complains that Gish was improperly allowed to testify about another teacher's description of the veracity of a complaint about plaintiff made by another student at Parkside. We agree with defendant that Gish's testimony involved inadmissible hearsay. According to Gish's testimony, the other teacher described the student's account of the matter that formed the basis for the complaint and then remarked that the student's account was not plausible. The other teacher's account of the student's description of the incident giving rise to the complaint qualifies as hearsay because it was introduced for the purpose of establishing the truth of the other teacher's statement questioning the veracity of the student's account. We do not agree with the trial court's ruling that the challenged testimony was admissible to show the effect upon the

listener. Indeed, plaintiff seems to concede that this testimony was erroneously admitted, but argues that any error was harmless. We agree that the error in admitting this evidence was harmless.

That a complaint was made against plaintiff by another student at Parkside was not a key disputed issue at trial, and the veracity of the student's complaint did not figure prominently into plaintiff being able to establish a prima facie claim under the WPA, or in defendant's proffered reasons for undertaking adverse employment actions against plaintiff. During the eight-day trial, plaintiff presented voluminous evidence documenting a concerted pattern of retaliatory conduct by defendant that predated the student complaint at Parkside. Thus, the complaint could not have been a factor in the jury's consideration of defendant's proffered reasons for its actions against plaintiff. Specifically, plaintiff presented evidence that shortly after she contacted the police and obtained the PPO following the October 12, 2015 assault, she experienced angry and confrontational behavior by Pack and Beal. Even before her transfer to Parkside, she was accused of fabricating her hand injury, placed on leave during the period in which defendant purportedly undertook to investigate the matter further, docked pay during her leave, and on her return to work she was abruptly transferred to another school after she sought to modify the PPO, which resulted in her losing her position as curriculum chair of JHS's art department. Shortly after arriving at Parkside, she was told by Patterson that she was a failing teacher and then she received her first ineffective evaluation in almost three decades. The evidence of the student complaint was peripheral and tangential to the core issues in dispute that the jury was required to decide. Accordingly, it is not more probable than not that the isolated testimony related to the veracity of the student complaint was outcome-determinative. *Nahshal*, 324 Mich App at 717. Because the testimony did not undermine defendant's substantial rights in any manner, it would not be inconsistent with substantial justice to not reverse the jury's verdict on the basis of the improper admission of this evidence.

## C. HARASSMENT COMPLAINT AGAINST ERIC WEATHERWAX

Defendant next argues that a harassment complaint form regarding an administrator at Parkside Middle School, Eric Weatherwax, was improperly admitted because it contained hearsay and "allowed [p]laintiff to improperly argue that numerous teachers have complaints" against defendant, "when such fact was neither probative nor properly supported."

We disagree with defendant's assertion that the document was inadmissible hearsay. The record supports plaintiff's counsel's assertion at trial that the document was introduced to highlight its effect upon plaintiff, rather than to establish the truth of its contents. Specifically, plaintiff's counsel drew attention to the document to showcase "the disrespect within the administration" that plaintiff felt she was subjected to working for defendant, particularly when she sought an evaluation score of effective and a transfer back to JHS. Plaintiff did not offer it to substantiate

the truth of the allegations that plaintiff and the other two teachers advanced against Weatherwax. Therefore, the trial court did not abuse its discretion by admitting this evidence.[2]

## D. MH'S DISCIPLINARY HISTORY

Defendant next challenges the trial court's decision to allow a redacted copy of log entries pertaining to MH's behavioral and disciplinary history at JHS into evidence. Defendant contends that the fact that MH may have committed other infractions at JHS was not relevant to any contested issue at trial and was "highly prejudicial" because it likely "confused the issues before the jury" and was calculated to garner the jury's sympathy. Defendant argues that the evidence was not relevant under MRE 401,[3] and was inadmissible under MRE 403 and MRE 404. We disagree.

MRE 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. *It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident* when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [Emphasis added.]

As the rule plainly provides, MRE 404(b)(1) prohibits evidence of a person's prior wrongs or acts to prove the character of the person in order to show action in conformity therewith, but permits such evidence for a "proper noncharacter purpose[.]"[4] *People v Crawford*, 458 Mich 376, 385; 582 NW2d 785 (1998). The test for admitting evidence under MRE 404(b)(1) is as follows:

First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v Denson*, 500 Mich 385, 398; 902 NW2d 306

---

[2] Defendant also makes a fleeting reference to the fact that "[t]his is the exact sort of evidence that MRE 404 seeks to exclude," but defendant has not supported this bare allegation with citation to legal authority or factual support in the record. Therefore, any argument in this regard is effectively abandoned. See *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position.")

[3] MRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[4] The rule applies to the prior bad acts of a third party who is not a defendant, witness, or victim. *People v Catanzarite*, 211 Mich App 573, 579; 536 NW2d 570 (1995).

(2017), quoting *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).]

However, "merely *reciting* a proper purpose" under MRE 404(b)(1) is not sufficient to render other acts evidence admissible; instead, a "trial court must closely scrutinize the logical relevance of the evidence" to determine whether it is relevant under MRE 402. *Denson*, 500 Mich at 398, 400.

We disagree with defendant's claim that the evidence of MH's prior disciplinary issues was introduced for the impermissible purpose of establishing that MH had a propensity to engage in certain types of behavior. Instead, the evidence was offered for its relevancy to the manner in which defendant's school administrators conducted their investigation of plaintiff's reported assault by MH and their subsequent discipline of MH. Plaintiff's counsel questioned Baird-Pauli regarding whether, in the course of the school's investigation of plaintiff's allegations, Baird-Pauli had reviewed plaintiff's prior allegations regarding MH's behavior in plaintiff's class, and whether MH's prior conduct violated provisions of defendant's code of conduct for students. As evidence was introduced throughout trial to establish that (1) defendant's school administrators were concerned that plaintiff may have fabricated, or at least exaggerated, her account of the assault, and (2) witnesses had stated that MH did not actually hit plaintiff, the evidence of MH's prior behavior at JHS, particularly as documented by plaintiff, bolstered plaintiff's credibility concerning her report of the assault by showing that she and MH had a turbulent history, her prior attempts to seek assistance from school administrators were not fruitful, and she had documented prior behavior by MH that she had experienced. "Evidence bearing on a witness's credibility is always relevant." *In re Dearmon*, 303 Mich App 684, 696; 847 NW2d 514 (2014).

Defendant also advances a cursory argument that the admission of the disciplinary log "confused the issues before the jury and invoked [the jury's] sympathy[,]" and was therefore admitted in violation of MRE 403.[5] MRE 403 does not prevent the admission of any evidence that could be considered prejudicial, only evidence that is "unfairly" prejudicial. *Crawford*, 458 Mich at 398. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Id.* In our view, the risk that the jury would give the evidence of MH's prior disciplinary history any weight in deciding its verdict was minimal, particularly because plaintiff's counsel, while questioning Baird-Pauli, did not spend a significant amount of time asking her about the substance of MH's disciplinary history, and the questions concerning his prior history were aimed at understanding defendant's investigation into the October 12, 2015 assault, rather than to illustrate that MH had a propensity to engage in violent and assaultive behavior. Additionally, while plaintiff was also questioned about MH's prior disciplinary history during her direct examination, the purpose of that line of questioning was to

---

[5] MRE 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

bolster her credibility. Accordingly, we are not persuaded that the evidence of MH's prior disciplinary history was inadmissible under MRE 404(b)(1) or MRE 403.

## E. INCOMPLETE FAX TRANSMITTAL DOCUMENTS

Defendant next argues that the trial court erred by admitting two documents related to faxes that plaintiff had sent to defendant's school administrators related to her medical records without the accompanying medical documentation. The thrust of defendant's argument on appeal is that because the fax transmission documents were introduced without the supporting medical documentation, plaintiff was able to use the "facially inaccurate and incomplete" evidence to support her theory that she complied with the requests of defendant's school administrators to provide them with her medical records. Defendant argues that admission of only the fax transmission documents violated MRE 106, which provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Even if we were to credit defendant's argument that admitting the fax transmission documents violated this rule of evidence, we would nonetheless conclude that the error was harmless. Notably, the medical documentation at issue, plaintiff's medical records from Med Plus, as well as from Allegiance Occupational Health, had already been admitted into evidence and presented for the jury's review, and plaintiff, during her prior direct examination testimony, clearly informed the jury regarding what specific medical documents she faxed to defendant's school administrators and when. Additionally, plaintiff's counsel sought introduction of the fax documentation *to confirm the dates and times of the transmissions* plaintiff made in response to Pack's request that her x-ray results and medical documentation be provided to him, *as opposed to the substance of the documents that were transmitted*. Under these circumstances, any error was harmless, particularly because the dates and times that plaintiff faxed the medical documentation to defendant's school administrators, while arguably relevant to defendant's decision to place plaintiff on paid administrative leave, were peripheral to the central issue at trial, that being whether plaintiff was retaliated against for going to the police and obtaining and modifying a PPO against MH. After a review of the entire record, it is more probable than not that any error was not outcome-determinative. *Nahshal*, 324 Mich App at 717.

## F. TRIAL COURT'S STATEMENT FROM THE PPO PROCEEDINGS

Defendant next argues that the trial court erred by admitting evidence related to the proceedings in which plaintiff secured, and sought a modification of, the PPO against MH. The trial judge who presided over this case was the same judge who handled the PPO proceedings. Defendant challenges testimony by plaintiff in which she stated that when the trial court issued the PPO, it informed her that it would speak to the principal of JHS if necessary.

We agree with plaintiff's characterization of this evidence as "innocuous," because, contrary to defendant's suggestion, it did not result in the trial court becoming "an out-of-court" witness." This is because the evidence was not introduced for the truth of its contents. It was *not*

introduced to demonstrate whether the trial court had instructed plaintiff to consult with the principal of JHS regarding any concerns she had about the PPO, but rather to confirm the temporal proximity of her filing a motion to modify the PPO in relation to the decision by defendant's school administrators to remove plaintiff from JHS. Contrary to defendant's assertion, this evidence was relevant to a fact in issue at trial because it was probative of plaintiff's allegation that defendant took unlawful retaliatory action against her shortly after she sought to modify the PPO that she had initially obtained against MH. While defendant characterizes the evidence as "highly prejudicial[,]" this characterization is simply not supported by the record. Plaintiff merely testified about the trial court's instructions to her when she initially sought the PPO, and nothing in her testimony suggested that the court "was aligned with" plaintiff in opposing defendant. Accordingly, we are not persuaded that the trial court abused its discretion by allowing the challenged testimony. *Nahshal*, 324 Mich App at 710.

## V. ATTORNEY MISCONDUCT

Defendant next argues that the trial court erred by denying its motion for a new trial on the basis of misconduct by plaintiff's counsel during opening statements. We disagree.

This Court reviews a trial court's decision in response to a motion for a new trial under MCR 2.611 for an abuse of discretion. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 761; 685 NW2d 391 (2004). The trial court abuses is discretion when its decision falls outside the range of reasonable and principled outcomes. *Zaremba Equip, Inc, v Harco Nat'l Ins Co*, 302 Mich App 7, 21; 837 NW2d 686 (2013). In *Guerrero v Smith*, 280 Mich App 647, 651-652; 761 NW2d 723 (2008), this Court, quoting *Reetz v Kinsman Marine Transit Co,* 416 Mich 97, 102-103; 330 NW2d 638 (1982), set forth the standard for reviewing claims of attorney misconduct in civil cases:

> When reviewing an appeal asserting improper conduct of an attorney, the appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless. If the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial. If the error is so preserved, then there is a right to appellate review; if not, the court must still make one further inquiry. It must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial. If the court cannot say that the result was not affected, then a new trial may be granted. Tainted verdicts need not be allowed to stand simply because a lawyer or judge or both failed to protect the interests of the prejudiced party by timely action.

Defendant moved for a new trial under MCR 2.611(A)(1), which provides, in pertinent part:

> A new trial may be granted to all or some of the parties, on all or some of the issues, whenever their substantial rights are materially affected, for any of the following reasons:

* * *

-18-

(b) Misconduct of the jury or of the prevailing party.

(c) Excessive or inadequate damages appearing to have been influenced by passion or prejudice.

Addressing first the alleged attorney misconduct under MCR 2.611(A)(1)(b), in *Zaremba*, 302 Mich App at 21, this Court stated:

An attorney's comments do not normally constitute grounds for reversal unless they reflect a deliberate attempt to deprive the opposing party of a fair and impartial proceeding. *Hunt v Freeman*, 217 Mich App 92, 95; 550 NW2d 817 (1996). "Reversal is required only where the prejudicial statements" reveal a deliberate attempt to inflame or otherwise prejudice the jury, or to "deflect the jury's attention from the issues involved." *Id*.

This Court must review the record as a whole to discern "the cumulative effect" of an attorney's alleged misconduct, and discern whether counsel sought to prejudice the jury and distract the jury from the substance and merits of the lower court proceedings. *Yost v Falker*, 301 Mich App 362, 365-366; 836 NW2d 276 (2013). Additionally, when a trial court provides a curative instruction in response to an improper comment, this Court presumes that the jury followed its instructions, which "are presumed to cure most errors." *Zaremba*, 302 Mich App at 25. Comments that are "isolated, brief," and do not appear to have figured prominently in the jury's verdict, may be considered harmless. *Id*. at 28.

Plaintiff's counsel's comments during opening statement were questionable to the extent that they insinuated the jury should send a message to other school districts in Michigan. However, the comments were confined to opening statement. Plaintiff's counsel did not continue to promulgate this kind of message throughout the trial. Furthermore, upon timely objection by defense counsel, the trial court acted to immediately provide a contemporaneous curative instruction, and then later provided an additional curative instruction during the final jury instructions.

In support of its argument that a new trial is warranted, defendant attempts to compare the comments by plaintiff's counsel to the comments found to be objectionable in *Gilbert*. We find no merit to this comparison. In *Gilbert*, counsel for the plaintiff inflamed the jury by "supplanting law, fact, and reason with prejudice, misleading arguments, and repeated *ad hominem* attacks against [the] defendant based on its corporate status." *Id*. at 770. For example, counsel for the plaintiff repeatedly attempted to equate the plaintiff's treatment by the defendant with the victims of the Holocaust and compared the defendant, an American automaker that had recently merged with a German automaker, with the Nazis. *Id*. at 771-773. The plaintiff's counsel also insinuated repeatedly that the defendant believed that it did not need to comply with the law, which was particularly objectionable because no evidence was adduced at trial to support that assertion. *Id*. at 773-775. The plaintiff's counsel requested that the jury "send a message" to the defendant with its verdict, and the Court observed that the jury did so by awarding the plaintiff an amount that exceeded what was necessary to fully and fairly compensate her. *Id*. at 776. Moreover, the comments by the plaintiff's counsel were not "fleeting and unintentional." *Id*. at 777. Thus, the Court could not conclude that the conduct by the plaintiff's counsel was "innocuous" or

-19-

"unintended." *Id*. As a result, the Michigan Supreme Court overturned a verdict in favor of the plaintiff, concluding that "it should have been apparent to the trial court that the persistent and calculated efforts of plaintiff's trial counsel to thwart the jury's fact-finding role had borne fruit." Because the jury's deliberations had been "palpably affected" by the misconduct of counsel for the plaintiff, and "this wrought substantial harm to [the] defendant's right to a fair trial[,]" a new trial was ordered under MCR 2.611(A)(1)(c). *Id*. at 793.

In this case, the comments by plaintiff's counsel during opening statement, while questionable, do not rise to the level of the concerted, insidious, and deliberate pattern of misconduct that the plaintiff's counsel exhibited in *Gilbert*. Although plaintiff's counsel did urge the jury to "send a message" to (1) school districts across Michigan that teachers could not be retaliated against for speaking up about physical abuse by students, and to (2) teachers across Michigan that their courageous actions would be applauded and supported, the remarks were made in the context of explaining to the jury the importance of its function in hearing this case and administering justice. The comments were not made in the context of encouraging the jury to render an award of damages that would send a message to school districts because of its verdict. Further distinguishing this case from *Gilbert* is that the conduct by plaintiff's counsel was not repeated after defendant raised an objection, and the court gave curative instructions advising the jury that it was not its role to "send a message" to other school districts in Michigan in deciding this case, or to send a message to defendant through any award of damages to plaintiff. Under these circumstances, the trial court did not abuse its discretion by denying defendant's motion for a new trial.

## VI. REMITTITUR

Finally, defendant argues that the trial court abused its discretion by denying its motion for remittitur. We disagree.

We review a trial court's decision regarding a motion for remittitur for an abuse of discretion. *Pugno v Blue Harvest Farms, LLC*, 326 Mich App 1, 30; 930 NW2d 393 (2018). A court abuses its discretion when "it chooses an outcome outside the range of reasonable and principled outcomes." *Andreson v Progressive Marathon Ins Co*, 322 Mich App 76, 84; 910 NW2d 691 (2017). When reviewing the trial court's decision, this Court must review the evidence in the light most favorable to the plaintiff. *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 499; 668 NW2d 402 (2003).

MCR 2.611(A)(1)(d) provides that a new trial may be granted if a verdict is "clearly or grossly inadequate or excessive." Likewise, MCR 2.611(E)(1) provides:

> If the court finds that the only error in the trial is the inadequacy or excessiveness of the verdict, it may deny a motion for new trial on condition that within 14 days the nonmoving party consent in writing to the entry of judgment in an amount found by the court to be the lowest (if the verdict was inadequate) or highest (if the verdict was excessive) amount the evidence will support.

MCL 15.363 provides that "[a] person who alleges a violation of this act may bring a civil action for appropriate injunctive relief, *or actual damages*, or both within 90 days after the

-20-

occurrence of the alleged violation of the [WPA]." (Emphasis added.) "[A]ctual damages . . . include compensation for mental distress and anguish." *Veselenak v Smith*, 414 Mich 567, 572, 574; 327 NW2d 261 (1982) (citation omitted). This Court has also held that "emotional distress damages are awardable in a claim brought under the WPA." *Phinney v Perlmutter*, 222 Mich App 513, 560; 564 NW2d 532 (1997), overruled on other grounds by *Garg*, 472 Mich at 290.

Remittitur is a procedural process in which the jury's verdict is "diminished by subtraction." *Andreson*, 322 Mich App at 84. In determining whether remittitur is warranted, the dispositive inquiry is whether the jury's award falls within the range of the evidence presented at trial, "and within the limits of what reasonable minds might deem just compensation for such imponderable items as . . . pain and suffering." *Id.*, quoting *Pippen v Denison Div of Abex Corp*, 66 Mich App 664, 674; 239 NW2d 704 (1976). A trial court may consider whether the jury's verdict was the result of "improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact," but when the court considers a motion for remittitur, "its inquiry should be limited to *objective* considerations related to the actual conduct of the trial or to the evidence adduced." *Palenkas*, 432 Mich at 532; *Diamond v Witherspoon*, 265 Mich App 673, 694; 696 NW2d 770 (2005).

The role of an appellate court in reviewing a jury's verdict is limited. It is the jury's role to determine the amount of damages, and it is not for this Court to usurp the role of the jury "to decide what amount is necessary to compensate the plaintiff." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 547; 854 NW2d 152 (2014). Consequently, the power of remittitur is to be exercised with significant restraint. *Andreson*, 322 Mich App at 84. As this Court observed in *Diamond*:

> [T]he question of the excessiveness of a jury verdict is generally one for the trial court in the first instance. The trial court, having witnessed all the testimony and evidence as well as having had the unique opportunity to evaluate the jury's reaction to the proofs and to the individual witnesses, is in the best position to make an informed decision regarding the excessiveness of the verdict. Accordingly, an appellate court must accord due deference to the trial court's decision and may only disturb a grant or denial of remittitur if an abuse of discretion is shown. [265 Mich App at 692-693, quoting *Palenkas*, 432 Mich at 531]

Because this Court's review is limited to the written record of the trial proceedings, it "can only speculate about the jury's actual reaction to testimony,"; therefore, this Court is "obliged to give the trial court the benefit of the doubt" with respect to its assessment of the evidence and whether the jury acted out of prejudice, bias, and anger. *Palenkas*, 432 Mich at 536-537.

In this case, the jury awarded plaintiff $10,290 in economic damages, $2,240 in future economic damages, $150,382 in noneconomic damages, and $225,573 in future noneconomic damages. On appeal, defendant only challenge the jury's award of $225,573 for future noneconomic damages.

At trial, plaintiff presented extensive testimony regarding the extended and ongoing embarrassment, stress, humiliation, trauma, and mental pain and anxiety she experienced because of defendant's retaliatory conduct, for which she had sought professional treatment from Dr.

Mitchell S. Weisbrod, a clinical psychologist. Plaintiff shared that she feels discriminated against at work and still feels like she has a "target" on her back while at work. She continues to struggle with a high level of anxiety for which she requires medication. Plaintiff also explained that the stress from work had resulted in depression, sleep disturbance, and prevented her from enjoying activities that she formerly participated in during her personal time at home, particularly creating her own art. According to Dr. Weisbrod, at the time of trial, plaintiff was still struggling tremendously emotionally and mentally because of the retaliation. He explained:

> I think persistently [plaintiff has] felt that she's been treated poorly, she's been treated differently than other teachers in similar situations. Her anxiety has at times gotten better, but because of continued stressors or new things [sic] have gotten progressively worse.

> *   *   *

> [Plaintiff] has described it and the way she describes it says that she is given criteria for success and the bar continues to move and she feels she's been set up to fail. And therefore, you know, it's two steps forward, three steps back and she – then we've been working hard just for her to maintain her composure, maintain her ability to function and keep going to and keep working, so.

After reviewing the record, we are satisfied that the jury's award of future noneconomic damages, while sizable, is within the range of the evidence presented at trial; it is "within the limits of what reasonable minds might deem just compensation for such imponderable items as . . . pain and suffering." *Andreson*, 322 Mich App at 84, quoting *Pippen*, 66 Mich App at 674.

Although defendant briefly asserts that the jury's verdict was swayed by "improper argument, passion, or prejudice," defendant does not elaborate on this allegation. This Court's inquiry is limited to "objective considerations" regarding the actual conduct of the trial and the evidence presented. *Palenkas*, 432 Mich at 532. The record discloses the existence of factual support for plaintiff's noneconomic damages, and defendant has not established objective factual support for its claim that the jury's verdict was the product of improper argument, passion, or prejudice. Accordingly, the trial court properly declined to interfere with the jury's verdict. Thus, the trial court did not abuse its discretion by denying defendant's motion for remittitur.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto