*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

BENJAMIN MICHAEL BENTZ,

      Defendant-Appellant.

UNPUBLISHED
February 17, 2022

No. 346529
Mason Circuit Court
LC No. 15-002928-FC

## ON REMAND

Before: MURRAY, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. (*dissenting*)

I generally agree with the majority's recitation of the factual and procedural background of this case, although I will add to that recitation below. Our Supreme Court's order on remand was for our "consideration of the defendant's argument that the testimony of Dr. N. Debra Simms that the complainant suffered 'probable pediatric sexual abuse' requires reversal of the defendant's convictions under the plain-error analysis of *People v Carines*, 460 Mich 750, 763-764[; 597 NW2d 130] (1999), and [our Supreme] Court's decision in *People v* [*Thorpe/*]*Harbison*, 504 Mich 230[; 934 NW2d 693] (2019)." *People v Bentz*, ___ Mich ___; 957 NW2d 335 (2021). I take no particular issue with the majority's conclusion that the "probable pediatric sexual abuse" portion of Dr. Simms's testimony constituted plain error, although I do not think that conclusion is in any serious dispute or doubt.[1] The real issue before us is not whether plain error occurred, but whether that plain error *affected the outcome of the lower court proceedings*. See *Carines*, 460 Mich at 763-764. I respectfully disagree with the majority's conclusion that the pertinent testimony did affect the outcome of the lower court proceedings.

---

[1] Indeed, we expressly held as much in our prior opinion.

# I.  ADDITIONAL FACTS

Dr. Simms testified as the first witness on the second day of trial, the victim having testified the previous day.  Dr. Simms testified about how she conducted the physical examination, including extensively reciting what the victim told her.  Dr. Simms noted that obtaining a medical history is "very important."  Dr. Simms concluded that "essentially, her physical examination showed a normal anal-genital examination."  The prosecutor then asked her for her "overall assessment," to which Dr. Simms replied, "[m]y overall assessment was probable pediatric sexual abuse."  Dr. Simms explained that she based that assessment "[u]pon the history and the physical examination of [the victim]."  Much of the following testimony consisted of Dr. Simms explaining why it was common and expected for a physical examination of a child sexual abuse victim to be normal.

On cross-examination, Dr. Simms clarified that she had the option of making four possible findings: "no medical indication of abuse at this time . . . possible abuse, probable abuse, or definite abuse."  She explained that "definite abuse" required a physical finding, like pregnancy or an exclusively sexually-transmitted disease, that could not occur in the absence of sexual abuse.  She also explained that "no medical indication of abuse" required the patient to report no history of abuse.  Therefore, the only possibilities given the victim's history and examination results were "possible abuse" or "probable abuse."  She concluded that the victim's "clear, consistent, detailed, and descriptive history is what placed it into the probable category."  Dr. Simms reaffirmed on further questioning that her conclusion was based on the victim's reported history.  When asked whether it was possible that a child could have made it up, given the absence of physical evidence, Dr. Simms initially refused to give a direct answer, instead explaining that as a physician, it was not her practice to "make a judgment" or call a patient a liar.  She stated that she had no concerns about the victim lying, but she eventually admitted that "it's not impossible that children lie."

During closing argument, the prosecutor referenced Dr. Simms as follows:

> And as Dr. Simms stated, even though the medical examination a year after the fact showed no scarring, bruising, cuts, that that [sic] was really not a surprise. We heal after a month – or, excuse me, after – You know, within a year, we are certainly healed.  Children are certainly healed.  And that her clear, consistent, and coherent report of sexual abuse at the hands of her father made this a case of probable child sexual abuse.  The fact that there was no physical evidence does not rule out that it didn't happen.  It doesn't tell you that it didn't happen.

> And Dr. Simms even told us about the elasticity of the anal area and how we have children with large bowel movements – "large stools," as she referred to them – and that these large stools oftentimes have to be broken up in order to have them pass and that children are afflicted with this condition from time to time, and certainly with the elasticity of that area of the body that there is no certainty that any injury would occur.  And in this situation, [the victim] did not report that there was any blood when she did go to the bathroom afterwards.

Defense counsel largely reiterated that the prosecution had essentially conceded they had no physical evidence of any abuse, pointing out that this was "exactly a case based entirely on [the victim's] statements." On rebuttal, the prosecutor did not further mention Dr. Simms.

Following defendant's first appeal, our Supreme Court remanded for a *Ginther*[2] hearing. *People v Bentz*, 501 Mich 1057, 1057; 909 NW2d 831 (2018). Following remand, as we stated previously:

> At the *Ginther* hearing, defendant's trial attorney testified that he thought Dr. Simms's testimony bolstered the victim's credibility and that he considered objecting to it. Defense counsel chose not to object because he did not believe that the jury was paying attention to Dr. Simms's testimony and he did not want to draw attention to it by objecting. Furthermore, defense counsel wanted to flesh out Dr. Simms's testimony on cross-examination to destroy her credibility, and "the more things she was saying that were incredible, the more things [he] could get out of her" on cross-examination. [*People v Bentz*, unpublished per curiam opinion of the Court of Appeals, issued May 7, 2020 (Docket No. 346529), unpub op at p 2.]

Furthermore, defense counsel opined that Dr. Simms had come across in her testimony as "very pompous and very arrogant . . . And her testimony seemed, I don't want to say laughable, but it didn't really seem to help [the prosecution]." Defense counsel believed that the jury was not paying attention to Dr. Simms anyway, so instead of drawing the jury's attention to Dr. Simms's diagnosis by objecting, he chose to attack Dr. Simms's credibility by emphasizing that she had no physical evidence and getting her to admit that children lie. "And I felt the more things she was saying that were incredible, the more things we could get out of her on our side." The *Ginther* hearing was presided over by the same judge who presided over the trial.

As noted above, on appeal from the trial court's affirmance of defendant's convictions, we held, in part, that "Dr. Simms's testimony that she diagnosed the victim with probable pediatric sexual abuse on the basis of the victim's statements alone, without any physical evidence, constituted impermissible vouching for the credibility of the victim" and characterized that error as "obvious." *People v Bentz*, unpublished per curiam opinion of the Court of Appeals, issued May 7, 2020 (Docket No. 346529), unpub op at p 5. As noted by our Supreme Court, we were not presented with any argument to the effect that defendant's convictions should be vacated pursuant to *People v Thorpe/Harbison*, 504 Mich 230; 934 NW2d 693 (2019), but we nevertheless recognized *Thorpe/Harbison* as the basis for finding such obvious error. Our Supreme Court's remand order did not vacate or reverse that holding, nor did it ask us to reconsider that holding.[3]

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

[3] The issue previously before us was whether trial counsel's failure to object to Dr. Simms's testimony constituted ineffective assistance of counsel. Our Supreme Court likewise has left intact our determination that counsel was not ineffective. As noted, I therefore agree with the majority that Dr. Simms's testimony was plain error, but I do not share the majority's need to reanalyze why it was plain error. Our role is more limited.

Rather, it only directed us to consider whether that error "requires reversal of the defendant's convictions" under a plain-error analysis.

## II. APPLICABLE LEGAL PRINCIPLES

We have been directed to consider whether reversal of defendant's convictions is required under the plain-error analysis set forth of *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). As laid out by our Supreme Court:

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*Carines*, 460 Mich at 763-764 (quotations, citations, and alterations omitted).]

As discussed, the first two requirements have been well-established. At issue is only whether the error "affected the outcome of the lower court proceedings" and "resulted in the conviction of an actually innocent defendant or . . . seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence."

In *Carines*, the Court observed that "so-called 'structural errors' are found in a very limited class of cases." *Carines*, 460 Mich at 765. In *Thorpe/Harbison*, our Supreme Court described Dr. Simms's diagnosis of "probable pediatric sexual abuse" as not merely vouching for the victim's credibility, but was also

> far more pernicious than a mere evidentiary error. Rather, this error strikes at the heart of several important principles underlying our rules of evidence. Dr. Simms's testimony that TH suffered "probable pediatric sexual abuse" based solely on TH's statements about her history not only had the effect of vouching for TH's credibility, but it also invaded the province of the jury to determine the only issue in the case. Then, Dr. Simms reinforced this plain error by claiming that her diagnosis was based on a "national [consensus]" of pediatricians when even a cursory review of the article on which she relies reveals that the authors did not intend for pediatricians to rely on the article to make a diagnosis of "probable pediatric sexual abuse" at trial. This improperly admitted testimony very likely bolstered TH's credibility and affected the verdict. We conclude that the gravity of this significant error seriously affected the integrity of Harbison's trial. [*Thorpe/Harbison*, 504 Mich at 264-266.]

-4-

Critically, however, our Supreme Court did *not* hold that Dr. Simms's improper testimony constituted structural error or otherwise dispensed with the need to determine whether the testimony *actually affected* the outcome of the proceedings in this case. The fact that our Supreme Court remanded this matter to us for consideration, rather than peremptorily reversing outright, implicitly supports this conclusion. Therefore, although Dr. Simms's testimony that she diagnosed the victim with "probable pediatric sexual abuse" was blatantly erroneous, it does not require automatic reversal. Rather, it must be considered in the context of the entire case.[4]

As we previously recognized, the standards for analyzing claims of ineffective assistance and claims of plain error are distinct. *People v Randolph*, 502 Mich 1, 11-12, 16; 917 NW2d 249 (2018). Nevertheless, as a consequence of the prior remand for a *Ginther* hearing, we have access to information about the trial in this matter that our Supreme Court lacked in *Thorpe/Harbison*. I therefore do not find our prior ineffective-assistance analysis wholly irrelevant.

### III. ANALYSIS

As an initial matter, I agree with the majority that, contrary to the prosecutor's argument, this was essentially a credibility contest. I disagree with the majority that the analysis effectively ends there.

Much of Dr. Simms's testimony in this case was strikingly similar to her testimony in *Thorpe/Harbison*. See *Thorpe/Harbison*, 504 Mich at 244-248. However, notably absent was any reference to a nationwide standard or national consensus of pediatricians, which our Supreme Court found "reinforced" Dr. Simms's plain error in *Thorpe/Harbison*.[5] *Id.* at 248, 265. Here, Dr. Simms only cited peer-reviewed publications for the proposition that it was not unusual to find no physical evidence of trauma—testimony that I do not understand to be objectionable. Also unlike *Thorpe/Harbison*, Dr. Simms was vigorously cross-examined regarding her lack of physical findings, and it was extensively emphasized that Dr. Simms had no basis for her diagnosis other than what the victim told her. Indeed, defense counsel made the point that Dr. Simms was, in effect, using the total absence of physical evidence of trauma as evidence that there *had* been trauma. Dr. Simms finally, despite reluctance that is obvious even from a cold transcript, admitted that it was "not impossible that children lie." No expert or other testimony conflicted with Dr. Simms's admission that children could possibly lie. I would note that as a matter of common, everyday experience, no person with any familiarity would children would expect children to always tell the truth all of the time.

More importantly, in *Thorpe/Harbison*, our Supreme Court concluded that Dr. Simms's improperly-admitted diagnosis "*very likely* bolstered [the victim's] credibility and affected the

---

[4] I am concerned that the majority's analysis treats this kind of testimony as if it does constitute structural error.

[5] I do not necessarily disagree with the majority that our Supreme Court characterized Dr. Simms's reference to national standards as supplemental prejudice, but I would not trivialize it as "icing on the prejudice cake," nor do I read *Thorpe/Harbison* as similarly dismissing it as irrelevant.

verdict." *Thorpe/Harbison*, 504 Mich at 265-266 (emphasis added). The use of such language implies a certain amount of guesswork, and nothing in *Thorpe/Harbison* suggests that the Court had available any account of Dr. Simms's actual demeanor or how she was actually being regarded by the jury. The holding in *Thorpe/Harbison* is consistent with the Court's holding, in the civil context,[6] that a litigant generally cannot demonstrate "what effect any particular statement has on a jury" and therefore need not " 'demonstrate affirmatively' a prejudicial effect on the jury" resulting from improper commentary. *Bd of Co Road Comm'rs of Wayne Co v GLS LeasCo, Inc*, 394 Mich 126, 139; 229 NW2d 797 (1975). However, a new trial is only warranted if the record does not permit the appellate court "to say that the jury was not diverted from the merits" or "that the 'mischief done' was cured by the judge's efforts." *Id.*; see also *Yost v Falker*, 301 Mich App 362, 366; 836 NW2d 276 (2013). Unlike *Thorpe/Harbison*, we have the benefit of testimony from the *Ginther* hearing describing the effect Dr. Simms had on the jury in real-time.

As discussed, the standards for ineffective assistance and plain error differ. However, defense counsel was fully aware that Dr. Simms's testimony was objectionable, but he declined to object in part because the jury did not seem to be paying much mind, Dr. Simms came across as pompous and arrogant, and it would be better to make clear to the jury that Dr. Simms's diagnosis was almost "laughably" baseless. Thus, we have the benefit of knowing from the record that defense counsel assessed the jury to be relatively disinterested in Dr. Simms's testimony. See *Yost*, 301 Mich App at 366. Defense counsel further believed that to the extent the jury was paying attention, Dr. Simms's testimony bordered on being laughable, and he proceeded to extensively establish on cross-examination that it had no physical basis. Defense counsel's assessment cannot substitute for our own, see *Randolph*, 502 Mich at 11, but it nevertheless conveys valuable information that could not otherwise be gleaned from a cold transcript. Similar information would not have been available to the Court in *Thorpe/Harbison*. Furthermore, given that there was no dispute that Dr. Simms had no physical evidence upon which to base her diagnosis, I fail to understand how the trial court's instruction to "think carefully about the reasons and facts she gave for her opinion, and whether those facts are true" and "whether her opinion makes sense when you think about the other evidence in the case" bolstered her testimony merely by referencing her qualifications.

I do not read *Thorpe/Harbison* as establishing that it is structural error obviating the need for meaningful analysis of *actual prejudice* any time an examining pediatrician testifies to a diagnosis of "probable [or possible] pediatric sexual abuse" solely on the basis of a child patient's statements. If such a bright-line rule was intended, then our Supreme Court would have done the bench and bar a tremendous disservice not to say as much in so many words. If such testimony warrants mandatory and mechanistic reversal outright, then trial judges will know to order a mistrial immediately upon an expert uttering the forbidden words, and prosecutors will know to dispense entirely with testimony from examining physicians who discover no physical findings. However, our Supreme Court has not made any such pronouncement, and its order of remand, which necessarily implies there is actually something for us to consider, indicates that it intended no such outcome. That being the case, I respectfully disagree with the majority that the facts of

---

[6] The reasoning in *GLS LeasCo, Inc* appears to "appl[y] equally to both civil and criminal cases." See *Hoffman v Monroe Pub Schs*, 96 Mich App 256, 260; 292 NW2d 542 (1980).

this case are so close to those of *Thorpe/Harbison* that the same outcome necessarily follows.  The record in this case reveals a much lower likelihood that Dr. Simms's improper diagnosis testimony *actually* affected the jury's verdict.  I would affirm.

/s/ Amy Ronayne Krause