YOST v FALKER

Docket No. 306774. Submitted February 7, 2013, at Detroit. Decided
June 18, 2013, at 9:05 a.m. Leave to appeal sought.

Stacy A. Yost brought a third-party no-fault action in the Macomb
Circuit Court against Howard R. Falker, alleging that a scar
adjacent to her eye resulting from the automobile accident consti-
tuted a permanent, serious disfigurement. The jury concluded that
it did not, and the court, John C. Foster, J., entered a judgment for
defendant. Plaintiff moved for a new trial, asserting that during
trial defense counsel had engaged in repeated misconduct that
deprived her of a fair trial. The court denied the motion, and
plaintiff appealed.

The Court of Appeals *held*:

During trial, defense counsel made several improper argu-
ments and inquiries about plaintiff's decision to seek counsel and
her decision to file suit. In his opening statement, defense counsel
argued that the jury should reject plaintiff's claim because she
filed her lawsuit less than one month after the accident. Questions
that formed the bulk of his cross-examination of witnesses were
clearly intended to improperly suggest that prompt consultation
with counsel after an automobile accident was somehow improper
and that the jury should find for defendant to deter the filing of
lawsuits. In closing argument, defense counsel told the jury that it
should reject plaintiff's claim because too many people are seeing
lawyers and filing too many lawsuits and claimed that the suit and
the amount of compensation sought was prompted by the greed of
plaintiff's counsel. When an attorney's misconduct at trial is
intended to prejudice the jury and divert the jurors' attention from
the merits of the case, the burden is on the party who engaged in
the misconduct to demonstrate that the misconduct did not have
that effect and that retrial is not warranted. Typically, what effect
any particular statement had on a jury cannot be demonstrated, so
the party against whom the misconduct was directed is not
required to demonstrate affirmatively that the statements had a
prejudicial effect. It is clear that defense counsel sought to preju-
dice the jury. Defendant, however, was able to demonstrate affir-
matively that his counsel's statements, though intended to preju-

dice the jury, did not have that effect. During deliberations, the jury sent a note to the trial court asking whether the jury could still compensate plaintiff if it concluded that she had not suffered a permanent, serious disfigurement. In the context of the entire record, this question made it clear that the jury did not conclude that plaintiff was unworthy of compensation or that it should deny compensation to discourage lawsuits. In light of this inquiry, it appears that the jurors concluded on the basis of the actual evidence, including their own view of plaintiff's scar throughout the trial, that the scar did not constitute a permanent, serious disfigurement. In the absence of the jury's written question that constituted compelling evidence of a lack of prejudice, however, reversal and a new trial would have been required for defense counsel's improper comments.

Affirmed.

TRIAL — ATTORNEYS — MISCONDUCT — PREJUDICIAL EFFECT ON JURY.

When an attorney's misconduct at trial is intended to prejudice the jury and divert the jurors' attention from the merits of the case, the burden is on the party who engaged in the misconduct to demonstrate affirmatively that the misconduct did not have that effect and that retrial is not required; the party against whom the misconduct was directed need not demonstrate affirmatively that the statements had a prejudicial effect.

*Patrick A. Rooney* and *Richard E. Shaw* for plaintiff.

*Caravas & Manikas* (by *Gary W. Caravas*) for defendant.

Before: SHAPIRO, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM. In this third-party automobile negligence case, the jury concluded that plaintiff's scar adjacent to her eye did not rise to the level of a permanent, serious disfigurement, and so judgment for defendant was entered. Plaintiff moved for a new trial, asserting that during trial defense counsel engaged in repeated misconduct that deprived plaintiff of a fair trial. We agree that defense counsel engaged in miscon-

duct intended to divert the jury from the merits of the case. We affirm, however, because a note sent by the jury to the court during deliberations unequivocally demonstrated that these efforts had not succeeded and that the jury was not prejudiced against the plaintiff's claim.

During trial, defense counsel made several improper arguments and inquiries about plaintiff's decision to seek counsel and the decision to file suit. In his opening statement, defense counsel argued that plaintiff's claim should be rejected because her lawsuit was filed less than one month after the accident. He stated: "On October 26, '09, she starts a lawsuit. What? Twenty-four days after this accident she's already filing a lawsuit . . . ."

This theme was continued during proofs. The first witness called by the plaintiff was her husband. At the outset of cross-examination, defense counsel asked a series of questions concerning when the plaintiff first consulted an attorney, whether her husband attended the first meeting with the attorney, whether the attorney came to their home, how many times they met with the attorney, and the date the complaint was filed in relation to the accident. These questions, which made up the bulk of the entire cross-examination, were clearly intended to improperly suggest, like defendant's opening statement, that prompt consultation with counsel after an automobile accident was somehow improper and that the jury should find for defendant to deter the filing of lawsuits.

Defense counsel's cross-examination of plaintiff similarly focused on the timing of her consultation with and retention of counsel. Plaintiff was asked when she first consulted an attorney, how she selected the attorney, whether her husband was with her when she first met

with the attorney, why her attorney filed suit, and to confirm the date the lawsuit was filed in relation to those meetings.

This strategy reached its culmination after the parties rested. In closing argument, defense counsel told the jury that plaintiff's claim should be rejected because too many people are seeing lawyers and filing too many lawsuits:

> Two weeks [after the crash] and she's in the lawyer's office. And you say to yourself . . . two weeks with a scar like that to be going in to file a lawsuit.
>
>      \*    \*    \*
>
> In steps the lawyer. I can sue. . . . I'm going to sue. And he wastes no time. He drafts it --- we know that at least by 10-23 [2009] he drafts it, and it's filed with the court on the 26th. . . .
>
>      \*    \*    \*
>
> . . . And we've *seen a lot of that in TV commercials, and every time you turn around, I'll sue, I'll sue.* [Emphasis added].

Defendant's attorney repeated this assertion again later in his closing argument and went so far as to claim that the suit and the amount of compensation sought was prompted by plaintiff's counsel's greed "[b]ecause after all is said and done, [plaintiff's counsel] [does] well on it. If he does well, he does well for the case."

It is well settled that the cumulative effect of an attorney's misconduct at trial may require retrial when the misconduct sought "to prejudice the jury and divert the jurors' attention from the merits of the case." *Kern v St Luke's Hosp Ass'n of Saginaw*, 404 Mich 339, 354; 273 NW2d 75 (1978); see also *Badalamenti v William*

*Beaumont Hosp-Troy,* 237 Mich App 278, 289; 602 NW2d 854 (1999); *Reetz v Kinsman Marine Transit Co,* 416 Mich 97; 330 NW2d 638 (1982); *Shemman v American Steamship Co,* 89 Mich App 656, 666; 280 NW2d 852 (1979); *Wayne Co Bd of Rd Comm'rs v GLS LeasCo, Inc,* 394 Mich 126, 138; 229 NW2d 797 (1975) (" '[O]ne cannot read the record without being impressed' that [counsel] refused to proceed solely on the merits.") (citation omitted). After a review of the entire record, we conclude that defense counsel did seek "to prejudice the jury and divert the jurors' attention from the merits of the case." *Kern,* 404 Mich at 354.

Typically, "[i]t cannot be demonstrated what effect any particular statement has on a jury," and for this reason the nonoffending party is not required to "demonstrate affirmatively" that the statements had a prejudicial effect. *GLS LeasCo,* 394 Mich at 139. However, this case is unusual in that defendant is able to affirmatively demonstrate that the statements, though intended to prejudice the jury, did *not* have that effect. During deliberations, the jury sent a note to the trial court asking, "If we, as a jury, choose no for question number one [whether plaintiff suffered a permanent, serious disfigurement], can we still compensate her?" Reviewing this question in the context of the entire record makes it clear that the jury did not conclude that plaintiff was unworthy of compensation or that it should deny compensation to discourage lawsuits. In light of the jury's inquiry, we are fully convinced that the jurors concluded on the basis of the actual evidence, including their own view of plaintiff's scar throughout the trial, that plaintiff's scar did not constitute a permanent, serious disfigurement.

Defense counsel's comments were improper. In the absence of the jury's written question that constituted

compelling evidence of a lack of prejudice, reversal and a new trial would have been required. However, given the jury's inquiry, we affirm.

SHAPIRO, P.J., and SERVITTO and RONAYNE KRAUSE, JJ., concurred.