*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANEE JORDAN,

        Plaintiff-Appellant,

v

BRIAN G. KISSEL, DPM, FOOT & ANKLE
SPECIALISTS OF SOUTHEAST MICHIGAN,
GREYARD LAMM, and LEGACY DMC, doing
business as DETROIT MEDICAL CENTER, and
doing business as DETROIT RECEIVING
HOSPITAL,

        Defendants-Appellees.

UNPUBLISHED
May 18, 2023

No. 359792
Wayne Circuit Court
LC No. 18-010837-NH

Before: RICK, P.J., and SHAPIRO and O'BRIEN, JJ.

PER CURIAM.

Plaintiff brought this medical malpractice action against defendants, Brian G. Kissel, D.P.M., his practice, Foot & Ankle Specialists of Southeast Michigan (collectively, the Kissel defendants), Greyard Lamm, and Legacy DMC, doing business as Detroit Medical Center and Detroit Receiving Hospital. After defendants Lamm and Legacy DMC were dismissed, the case proceeded to a jury trial against the Kissel defendants, which resulted in a verdict of no cause of action.

Plaintiff now appeals as of right the judgment of no cause of action entered in favor of the Kissel defendants, as well as the trial court's order denying plaintiff's motion for judgment notwithstanding the verdict (JNOV). Plaintiff also challenges the trial court's pretrial order granting summary disposition in favor of Lamm. We affirm.

## I. FACTS AND PROCEEDINGS

Plaintiff fell and injured her ankle on February 19, 2016. She received treatment at the Harper Hospital emergency room (ER). It is undisputed that plaintiff's ER x-rays showed a fracture of the fibula at the level of the ankle joint, but the parties dispute whether those x-rays

-1-

also showed a widening of the medial ankle mortis in the syndesmosis (ankle joint) that indicated an injury to one of plaintiff's ligaments.

From February to July 2016, plaintiff periodically visited Lamm, a physician's assistant, at the Orthopedic Clinic at Detroit Receiving Hospital. Lamm tried to conservatively treat plaintiff's injury with an ankle brace and an orthotic boot, but plaintiff's x-rays, as well a CT scan, continued to show a "nonunion" of the fracture that was not healing, and plaintiff continued to experience pain. On July 8, 2016, Lamm consulted Dr. Kissel, who reviewed plaintiff's x-rays and CT scan, and recommended that plaintiff have surgery to repair the nonunion with a plate, screws, and bone graft. The surgery took place on July 22, 2016. The parties dispute whether plaintiff met Dr. Kissel before the surgery.

Plaintiff had periodic visits with Dr. Kissel during the year following surgery. Dr. Kissel found that the nonunion was healing, but plaintiff continued to report ankle pain. In October 2017, plaintiff consulted with an orthopedic surgeon, Dr. Gary Gilyard, who determined from an MRI that one of the ligaments in plaintiff's syndesmosis was torn. Dr. Gilyard performed surgery to repair the ligament, and plaintiff discontinued treatment with Dr. Kissel.

On August 18, 2018—after serving a notice of intent on all defendants pursuant to MCL 600.2912b—plaintiff filed this action alleging that Lamm and Dr. Kissel violated the standard of care by failing to recognize that she had a torn ligament in addition to the fracture. An affidavit of merit (AOM) did not accompany the complaint, but plaintiff subsequently filed a motion asking for an extension of time to file one, which the trial court granted. The AOM that plaintiff filed was signed by a podiatrist, and Lamm moved for summary disposition on grounds that plaintiff's AOM was insufficient as to Lamm, a physician's assistant. The trial court agreed and granted summary disposition for Lamm.[1] Plaintiff's claim against the Kissel defendants proceeded to trial. At the conclusion of trial, the jury found that Dr. Kissel was not professionally negligent. After the court entered a judgment for defendants, plaintiff filed a motion for JNOV, which the trial court denied. This appeal followed.

## II. DISMISSAL OF CLAIM AGAINST DEFENDANT LAMM

Plaintiff first challenges the trial court's conclusion that plaintiff failed to file a timely AOM substantiating her claim against Lamm. A trial court's decision to strike an AOM is reviewed for abuse of discretion. *Kalaj v Khan*, 295 Mich App 420, 425; 820 NW2d 223 (2012). Issues concerning the interpretation and application of statutes and court rules are reviewed de novo. *Safdar v Aziz*, 501 Mich 213, 217; 912 NW2d 511 (2018).

"In an action alleging medical malpractice filed on or after October 1, 1993, each party must file an affidavit as provided in MCL 600.2912d and 600.2912e." MCR 2.112(L)(1). MCL 600.2912d(1) provides that a plaintiff alleging medical malpractice must "file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under section 2169." The AOM must state

---

[1] Plaintiff filed an application for leave to appeal this order, which this Court denied. *Jordan v Kissel*, unpublished order of the Court of Appeals, entered June 26, 2019 (Docket No. 347824).

the elements of a claim for medical malpractice, including "[t]he applicable standard of practice or care." MCL 600.2912d(1)(a). MCL 600.2169(1) provides the qualifications for expert witnesses in medical malpractice actions. If the defendant is a specialist, the expert must specialize in the same specialty. MCL 600.2169(1)(a). If the defendant is a general practitioner, the witness also must be a general practitioner. MCL 600.2169(1)(c). "Section 2961(1)(a) and (c) apply, respectively, to specialists and general practitioners, but these terms refer only to physicians, not other health professionals." *Wolford v Duncan*, 279 Mich App 631, 636; 760 NW2d 253 (2008). "A physician's assistant is not a physician; therefore, the criteria set forth in § 2961(1)(a) and (c) do not apply." *Id*. Instead, MCL 600.2169(1)(b) applies, and that subsection requires that the expert:

> (b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

> (*i*) The *active clinical practice of the same health profession* in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

> (*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program *in the same health profession* in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty. [Emphasis added.]

Plaintiff argues that her AOM satisfied the requirements of MCL 600.2912d(1) because her attorney reasonably believed that her expert—a podiatrist named Dr. Pamela Karman, D.P.M.—was qualified to testify as an expert regarding Lamm's standard of care under MCL 600.2169(1)(b), regardless of whether Dr. Karman was actually qualified to do so. See MCL 600.2912d(1) (explaining that an AOM must be "signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under section 2169"). We agree with Lamm, however, that any such belief by plaintiff's attorney was unreasonable in light of *Wolford*. In that case, this Court (1) held that only a person who practiced in "the same health profession" as that term is used in MCL 600.2169(1)(b) was qualified to testify as an expert regarding a physician's assistant, (2) plainly stated that "[a] physician's assistant is not a physician," and (3) held that an expert who "devoted a majority of his professional time to active clinical practice as a physician's assistant" was qualified to give expert testimony regarding a physician's assistant standard of care under MCL 600.2169(1)(b)(*i*). *Wolford*, 279 Mich App at 636-637. On the basis of *Wolford*, it is plain that a podiatrist is not "in the same health profession" as a physician's assistant for purposes of MCL 600.2169(1)(b). Accordingly, plaintiff's attorney's belief that Dr. Karman was qualified to testify as an expert regarding Lamm's standard of care was unreasonable.

Plaintiff insists that, regardless of whether Dr. Karman was qualified to testify as an expert regarding Lamm's standard of care, Lamm's challenge to plaintiff's AOM should have still been denied because it was untimely under MCR 2.112(L)(2)(b). That rule provides, "Unless the court

allows a later challenge for good cause . . . all challenges to an affidavit of merit . . . including challenges to the qualifications of the signer, must be made by motion . . . within 63 days of service of the affidavit on the opposing party." MCR 2.112(L)(2)(b).

To fully address this argument, it is necessary to detail the murky circumstances surrounding plaintiff's filing of the AOM in this case. Plaintiff filed her complaint on August 28, 2018. No AOM accompanied her complaint, but plaintiff's complaint stated that she would move for an extension of time to file an AOM. On September 26, 2018, after plaintiff failed to file for any such extension, the Kissel defendants moved for summary disposition on the basis of plaintiff's failure to file an AOM. Lamm followed suit on October 10, 2018. A day later, on October 11, 2018, plaintiff finally moved for an extension of time to file the AOM. In that motion, she asserted that the Kissel defendants were preventing her from accessing her medical records in violation of MCL 600.2912b(6), which gave her an additional 91 days to file her AOM pursuant to MCL 600.2912d(3). On appeal, plaintiff claims that six days later, on October 17, 2018, she attached Dr. Karman's AOM to "an amended complaint," and that this should be the date that the 63-day period provided in MCR 2.112(L)(2)(b) began running. However, plaintiff did not file an amended complaint on that day; she instead attempted to initiate a new and separate case filing. Plaintiff did not file Dr. Karman's AOM in this case until October 25, 2018, when plaintiff attached it as an exhibit to her response to defendants' motions for summary disposition. At that time, however, plaintiff's October 11, 2018 motion to extend the period for filing the AOM was pending. The trial court did not grant plaintiff's motion to extend the period for filing her AOM until January 2, 2019. On that day, the trial court denied defendants' motions for summary disposition and ordered plaintiff to file an AOM within seven days. Plaintiff took no action, however, and the day after plaintiff's seven-day grace period expired, Lamm challenged the sufficiency of plaintiff's AOM with respect to Lamm.

Under these circumstances, we cannot conclude that Lamm failed to timely challenge plaintiff's AOM. The only reasonable interpretation of this record is that Dr. Karman's AOM was accepted for filing on January 2, 2019, when the trial court granted plaintiff's motion for an extension of time to file an AOM. Lamm therefore made a timely objection. If a defendant successfully challenges an AOM, "the proper remedy is dismissal without prejudice." *Kirkaldy v Rim*, 478 Mich 581, 586; 734 NW2d 201 (2007). Accordingly, we find no merit in plaintiff's argument that Lamm's motion was untimely.

## III. DEFENDANT KISSEL'S TESTIMONY

Plaintiff next argues that, during trial, Dr. Kissel was improperly permitted to testify as an expert witness on the standard of care for a podiatrist. This Court reviews a trial court's evidentiary decisions for an abuse of discretion. *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 333 Mich App 457, 477; 960 NW2d 186 (2020). Any preliminary questions of law, including the interpretation and application of statutes, are reviewed de novo. *Mueller v Brannigan Bros Restaurants & Taverns*, LLC, 323 Mich App 566, 571; 918 NW2d 545 (2018). This Court will not reverse on the basis of an erroneous evidentiary ruling "unless refusal to take this action appears to the court inconsistent with substantial justice." MCR 2.613(A). "A trial court's error is harmless if, based on review of the entire record, it is more probable than not that the error was not outcome-determinative; if the probability runs in the other direction, then it is reversible error." *Nahshal v Fremont Ins Co*, 324 Mich App 696, 717; 922 NW2d 662 (2018).

-4-

The substance of plaintiff's argument is that Dr. Kissel's testimony regarding the standard of care made him an expert witness and, therefore, subjected him to all requirements related to expert witnesses. Plaintiff contends that, despite this, the trial court refused to allow plaintiff to address Dr. Kissel's testimony via the procedures applicable to expert-witness testimony, which she claims denied her a fair trial.

Assuming without deciding that Dr. Kissel provided improper standard-of-care testimony, plaintiff is still not be entitled to relief because she has failed to establish that she was prejudiced by this error. Plaintiff argues that she was prejudiced because she did not have the opportunity to conduct discovery related to Dr. Kissel's testimony regarding the standard of care. MCR 2.302(B)(4)(a) provides:

> (4) Trial Preparation; Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subrule (B)(1) and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
>
> (a)(*i*) A party may through interrogatories require another party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter about which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.
>
> (*ii*) A party may take the deposition of a person whom the other party expects to call as an expert witness at trial. The party taking the deposition may notice that the deposition is to be taken for the purpose of discovery only and that it shall not be admissible at trial except for the purpose of impeachment, without the necessity of obtaining a protective order as set forth in MCR 2.302(C)(7).
>
> (*iii*) On motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions (pursuant to subrule [B][4][c]) concerning fees and expenses as the court deems appropriate.

Dr. Kissel's opinion testimony was limited to testimony regarding his own understanding of plaintiff's treatment, and plaintiff has not explained how her discovery was limited in any way relative to Dr. Kissel's testimony.

Plaintiff alternatively argues that she should have been allowed to introduce evidence that Dr. Kissel was previously proven liable for malpractice. However, plaintiff has not demonstrated that such evidence exists, or that she was barred from discovering or introducing such argument. Plaintiff has therefore failed to establish any prejudice on this ground.

## IV. USE OF TREATISES AT TRIAL

Next, plaintiff argues that the trial court erred in precluding her from using treatises in her examination of witnesses. MRE 707, which governs the use of learned treatises for impeachment, states:

To the extent called to the attention of an expert witness upon cross-examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice, are admissible for impeachment purposes only. If admitted, the statements may be read into evidence but may not be received as exhibits.

Plaintiff first complains that the trial court precluded her expert, Dr. Adina Anderson, from discussing literature that allegedly supported her opinion that Dr. Kissel violated the standard of care. We find no error in this regard, however, because MRE 707 clearly applies only to impeachment, so Dr. Anderson could not support her own testimony by reference to treatises.

We agree with plaintiff, however, that the trial court erred when it did not allow plaintiff to impeach defendant's expert witness, Dr. David Levitsky, with a treatise. While plaintiff was not able to complete this line of questioning of Dr. Levitsky, it was obvious that plaintiff intended to use the literature for impeachment, which is permissible under MRE 707. On appeal, however, plaintiff does not cite the treatise or provide any information indicating that the writings she referenced at trial were relevant to impeachment. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 105; 577 NW2d 100 (1998). Accordingly, plaintiff fails to establish outcome-determinative error. *Nahsal*, 324 Mich App at 717.

## V. USE OF AFFIDAVIT OF MERITORIOUS DEFENSE FOR IMPEACHMENT

Next, plaintiff argues that the trial court improperly precluded her from using Dr. Levitsky's affidavit of meritorious defense (AOMD) for impeachment. We disagree.

In a medical malpractice action, the expert's AOM or AOMD may be used to impeach an expert's testimony with prior inconsistent statements in the affidavit. *Barnett v Hidalgo*, 478 Mich 151, 167; 732 NW2d 472 (2007). Plaintiff states in her appellate brief that her counsel attempted to impeach defendants' retained expert "with his previous statements, and lack thereof, in his affidavit of meritorious defense," but the trial court "impermissibly barred Plaintiff's counsel from asking questions related to the contents of Defendant's affidavit of merit; which were vastly different than the positions he took on the witness stand." We have examined the transcript, but have found no instance in which defendants objected to plaintiff's use of the AOMD in her impeachment of Dr. Levitsky or any instance in which the trial court intervened. When plaintiff first began questioning Dr. Levitsky about his AOMD, defense counsel asked to approach, and after a sidebar, plaintiff continued questioning Dr. Levitsky about his AOMD. No objection was placed on the record, however, and we are unable to find an instance in the transcript to corroborate plaintiff's assertion that the trial court restricted her use of the AOMD for impeachment.[2] This

---

[2] Indeed, while plaintiff claims that she was not permitted to question Dr. Levitsky about certain inconsistencies in his AOMD, she cites to instances in the transcript showing the opposite—that

-6-

Court is not obligated to search the record for factual support for a party's claims. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 388; 689 NW2d 145 (2004). We accordingly reject plaintiff's claim of error on this ground.

## VI. IMPEACHMENT OF PLAINTIFF'S EXPERT

Next, plaintiff argues that the trial court erred in allowing the jury to hear the part of Dr. Gilyard's trial deposition in which defense counsel questioned him about a licensure sanction imposed on him for a surgical error. She argues that the evidence was irrelevant to any issue and was unfairly prejudicial.

Evidence is relevant "if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence." MRE 401. Generally, relevant evidence is admissible, except as otherwise provided by law. MRE 402. "Evidence which is not relevant is not admissible." MRE 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

MRE 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified

"Under MRE 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." *Persichini v William Beaumont Hosp*, 238 Mich App 626, 632; 607 NW2d 100 (1999). "However, pursuant to MRE

---

she was not only permitted, but actually did, ask Dr. Levitsky about the inconsistencies in his AOMD that plaintiff identifies on appeal.

608(b), a court may, in its discretion, allow inquiry regarding specific instances of the conduct of a witness for the purpose of attacking or supporting the witness' credibility where the conduct at issue is probative of the witness' character for truthfulness or untruthfulness." *Id*. "The credibility of a witness may be attacked by any party, including the party calling the witness." MRE 607.

In *Heshelman v Lombardi*, 183 Mich App 72; 454 NW2d 603 (1990), this Court held that the trial court abused its discretion by allowing defense counsel to ask the plaintiff's expert on cross-examination if he had been sued for malpractice. Remarking that "[e]vidence of prior malfeasance by a witness is admissible only under very specific circumstances and for very specific reasons" under MRE 608(b) and MRE 404(b), this Court concluded that the bare fact of a malpractice suit did not come within these exceptions. *Heshelman*, 183 Mich App at 84. This Court held that "mere unproven accusations of malpractice stated in a complaint cannot be used as a basis for attacking a physician's knowledge and credibility." *Id*. at 85. This Court analogized allegations of malpractice to unproven charges of criminal activity, noting that "[a]rrests and charges not resulting in conviction may not be used for impeachment." *Id*. This Court concluded, however, that the error was harmless and did not prejudice the plaintiff's case. *Id*. at 85-86.

In *Persichini*, 238 Mich App 626, the plaintiff argued that questions regarding the defense expert's prior malpractice action was relevant to his credibility. This Court held that the question was not relevant "because the question posed by counsel did not address any alleged misdiagnoses" in the past, but asked only if he "had previously been a defendant in multiple other medical malpractice cases." *Id*. at 633-634. This Court cited *Heshelman* for the statement "that evidence of prior malpractice actions against a witness is not relevant to the witness' competency or knowledge." *Id*. at 634.

We believe that a question regarding a licensure action against a professional is analogous to a question regarding a malpractice action. Thus, extending the reasoning from *Heshelman* and *Persichini*, the bare fact that a licensure action arose was not probative of Dr. Gilyard's credibility or competence to pass judgment on Dr. Kissel's professional competence, contrary to defendants' argument on appeal.

However, we conclude that the error did not deprive plaintiff of a fair trial. The jury found that Dr. Kissel was not "professionally negligent" as claimed by plaintiff, and Dr. Gilyard did not testify about whether Dr. Kissel breached the standard of care.[3] His interpretation of the ER x-ray was evidence that Dr. Kissel misinterpreted the x-ray and misdiagnosed plaintiff, but it was not offered as evidence that Dr. Kissel violated the standard of care for a podiatrist. That evidence came from Dr. Anderson's testimony. Accordingly, we conclude that this error was harmless.

## VII. JNOV

Next, plaintiff argues that the jury's verdict was contrary to the great weight of the evidence, and that the trial court erred by not granting her motion for JNOV or a new trial. A trial

---

[3] Plaintiff also claims that the trial court improperly precluded Dr. Gilyard from testifying about the standard of care, but Dr. Gilyard, as an orthopedic surgeon, was clearly not a qualified standard-of-care expert witness under MCL 600.2169 because Dr. Kissel is a podiatrist.

court's decision regarding a motion for JNOV is reviewed de novo. *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 29; 930 NW2d 393 (2018). "This Court will view all legitimate inferences from the evidence in the light most favorable to the nonmoving party." *Id*. (quotation marks and citation omitted). "Only if the evidence so viewed fails to establish a claim as a matter of law is JNOV appropriate." *Id*. (quotation marks and citation omitted). A trial court's denial of a motion for a new trial is reviewed for an abuse of discretion. *Allard v State Farm Ins Co*, 271 Mich App 394, 407; 722 NW2d 268 (2006).

A new trial may be granted on the ground that the verdict is clearly or grossly inadequate, and on the ground that the verdict was "against the great weight of the evidence or contrary to law." MCR 2.611(A)(1)(d) and (e). "When a party challenges a jury's verdict as against the great weight of the evidence, this Court must give substantial deference to the judgment of the trier of fact." *Allard*, 271 Mich App at 406. "If there is any competent evidence to support the jury's verdict, we must defer our judgment regarding the credibility of the witnesses." *Id*. at 406-407. Similarly, a jury's verdict withstands a motion for JNOV "if reasonable jurors could have honestly reached different conclusions." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 605-606; 886 NW2d 135 (2016) (quotation marks and citation omitted).

"In a medical malpractice case, plaintiff bears the burden of proving (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Wischmeyer v Schanz*, 449 Mich 469, 484; 536 NW2d 760 (1995). "Failure to prove any one of these elements is fatal." *Id*. Plaintiff's theories at trial were that Dr. Kissel violated the standard of care by failing to ensure that he obtained her informed consent and by failing to perform a presurgical physical examination. The jury rejected both of these arguments when it found that Dr. Kissel was not "professionally negligent," i.e., that he did not breach any standard of care.

Plaintiff argues that the jury could not have reasonably found the absence of a breach because it was undisputed that Dr. Kissel failed to obtain plaintiff's informed consent and failed to perform a presurgical examination. She emphasizes that the defense witnesses acknowledged that informed consent and a presurgical exam are part of the standard of care, and contends that she presented unrebutted evidence that neither standard was met. She asserts that Dr. Kissel's perfunctory or nonexistent meeting with plaintiff before surgery was not sufficient to inform her of her specific risks, and that, even if it were, the only evidence that Dr. Kissel actually performed these duties was a resident's notes, which were not sufficient documentation to create a question of fact on the issue.

Contrary to plaintiff's assertions, however, evidence besides the resident's notes supported that Dr. Kissel received plaintiff's informed consent and conducted a presurgical exam. For instance, Dr. Kissel testified that he recalled informing plaintiff of potential risks and benefits of surgery. When plaintiff asked, "Do you recall actually doing that, or you just do it all the time and think you did it for her?" Dr. Kissel replied, "Both. So I would tell you that that's something I do for every single patient." He stated, "[T]hat's something that I always discuss with every patient prior to surgery," and "I did perform history and physical on July 22 prior to that." The jury could

infer from this testimony that Dr. Kissel did in fact satisfy his obligation to perform a presurgical examination and inform plaintiff of the risks and benefits of the surgery.[4]

Plaintiff also argues that Dr. Kissel violated the standard of care by failing to view her ligaments. Plaintiff's argument is misplaced, however, because it assumes that syndesmotic injury was a proven fact and that Dr. Kissel had to have been incompetent not to realize it. Dr. Kissel testified that the x-ray report from plaintiff's ER visit on February 19, 2016, stated "oblique fracture of the lateral malleolus through the syndesmosis with minimal widening of the medial ankle mortise." He stated that the widening "was not necessarily related to the syndesmosis." He explained that a rotational injury usually injured the bone or the ligaments, not both. He also testified that he confirmed the position of the ligaments through a fluoroscopy during surgery. Dr. Levitsky stated that the x-rays and the June 2016 CT scan did not show the widening of space that indicated ligament injury. Dr. Anderson opined that the ligament injury was, in fact, evident from the original ER x-ray, and that Dr. Kissel missed it because he was over-focused on the nonunion. This testimony established a jury-triable question of fact regarding whether Dr. Kissel breached the standard of care with respect to examining plaintiff, interpreting diagnostic images, and determining which injuries were or were not present.

Plaintiff's argument also assumes that Dr. Kissel's failure to document his examination of plaintiff's ligaments, including his failure to document that he viewed the ligaments by fluoroscope during surgery, is incontrovertible proof that he never checked the ligaments. In support of her argument, plaintiff relies on Dr. Anderson's statement, "If it's not documented, I don't think it was done." But this was merely Dr. Anderson's opinion. The jury was free to give greater weight to Dr. Kissel's opposing testimony that it was accepted practice to not document negative findings. Plaintiff thus fails to establish that the evidence indisputably proved that Dr. Kissel failed to inform plaintiff of the risks and benefits of the surgery, failed to conduct a presurgical exam, and failed to recognize the presence of a ligament injury. The trial court therefore did not err by denying her motion for JNOV or a new trial.[5]

---

[4] Plaintiff also emphasizes that defense counsel stated in his opening argument that plaintiff jeopardized her own recovery by smoking, only to have Dr. Kissel contradict this statement by admitting that plaintiff stopped smoking. Unfortunately, plaintiff fails to elaborate on this argument further, and it is unclear how this is relevant to her argument that the trial court erred by denying her motion for JNOV or a new trial. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson*, 457 Mich at 105.

[5] Plaintiff also argues that the jury's verdict appears to have been "influenced by passion or prejudice" in Dr. Kissel's favor, but she does not cite any instance during trial in which Dr. Kissel, his witnesses, or his counsels appealed to the jury's sympathy or passion. There is no basis to infer that the jury found in defendants' favor for any reason other than that they evaluated the evidence and determined that Dr. Kissel was not professionally negligent.

-10-

## VIII. FACT TESTIMONY BY EXPERT WITNESS

Next, plaintiff asserts that the defense expert, Dr. Levitsky, gave improper and prejudicial factual testimony. Plaintiff did not raise this objection at trial, leaving the claim of error unpreserved. Unpreserved issues are reviewed for plain error affecting the party's substantial rights. *Demski v Petlick*, 309 Mich App 404, 426-427; 873 NW2d 596 (2015).

As explained by this Court in *Carson Fischer Potts & Hyman v Hyman*, 220 Mich App 116, 122-123; 559 NW2d 54 (1996):

> [T]he function of an expert witness is to supply expert testimony. This testimony includes opinion evidence, when a proper foundation is laid, and opinion evidence may embrace ultimate issues of fact. However, the opinion of an expert may not extend to the creation of new legal definitions and standards and to legal conclusions. Further, an expert witness is not permitted to tell the jury how to decide the case. . . . An expert witness also may not give testimony regarding a question of law, because it is the exclusive responsibility of the trial court to find and interpret the law. [Citations omitted.]

An expert witness also "may not vouch for the veracity of a victim" or reinforce another witness's testimony "by giving a stamp of scientific legitimacy to the truth of the complaining witness's factual testimony . . . ." *People v Muniz*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355977), slip op at 8 (quotation marks and citation omitted). "The facts or data in the particular case upon which an expert bases an opinion or inference shall be in evidence." MRE 703.

Dr. Levitsky's testimony did not violate these principles. Dr. Levitsky stated his opinion that plaintiff's medical records indicated that Dr. Kissel fulfilled the standard of care. He explained that he reached this conclusion by piecing together information from Lamm's notes, Kissel's records, and plaintiff's diagnostic images. He made inferences that Dr. Kissel had sufficient communication with Lamm regarding plaintiff's preoperative work-up. He opined that Dr. Kissel's reliance on Lamm was appropriate. Plaintiff claims that Dr. Levitsky based his opinion "on the inadmissible and undocumented hearsay testimony of Defendant," but this relates to plaintiff's mistaken belief that omissions in Dr. Kissel's records are conclusive and incontrovertible proof that he did not undertake certain measures. Plaintiff also refers to Dr. Levitsky's opinion that Dr. Kissel did not violate the standard of care, but this was appropriate opinion testimony. Plaintiff fails to identify any *factual* statement that Dr. Levitsky made that was outside of his knowledge unrelated to the formation of his opinion. Accordingly, plaintiff fails to establish plain error violating her substantial rights.

## IX. REBUTTAL TESTIMONY

Next, plaintiff argues that the trial court erred by denying her request to present rebuttal testimony by Dr. Anderson. A trial court's decision whether to admit rebuttal testimony is reviewed for abuse of discretion. *People v Steele*, 283 Mich App 472, 485-486; 769 NW2d 256 (2009). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008).

"Rebuttal testimony is used to contradict, explain, or refute evidence presented by the other party in order to weaken or impeach it." *Lima Twp v Bateson*, 302 Mich App 483, 502; 838 NW2d 898 (2013). "[T]he test of whether rebuttal evidence was properly admitted is not whether the evidence could have been offered in the prosecutor's case in chief, but, rather whether the evidence is properly responsive to evidence introduced or a theory developed by the defendant. *People v Figgures*, 451 Mich 390, 399; 547 NW2d 673 (1996). "As long as evidence is responsive to material presented by the defense, it is properly classified as rebuttal, even if it overlaps evidence admitted in the prosecutor's case in chief." *Id.* "[I]f the evidence should have been introduced in the case in chief, rebuttal is improper." *People v Mateo*, 453 Mich 203, 245 n 20; 551 NW2d 891 (1996).

In this case, plaintiff complains that she was not able to offer testimony by Dr. Anderson to rebut Dr. Levitsky's testimony that he could not see a space in plaintiff's x-rays that would have alerted Dr. Kissel to plaintiff's ligament injury. Yet Dr. Anderson already testified that plaintiff's presurgical x-rays showed a widening in the mortise that should have alerted Dr. Kissel to her ligament injury, and plaintiff fails to specify any additional testimony that Dr. Anderson would have offered. As plaintiff has not made an offer of proof that Dr. Anderson could have responded to Dr. Levitsky's testimony in any way other than reiterating her already-stated disagreement, we conclude that, even if the trial court abused its discretion by denying her request to re-call Dr. Anderson as a rebuttal witness, the error was harmless given that Dr. Anderson already testified to the information that plaintiff wished to present in rebuttal.

## X. ATTORNEY MISCONDUCT

Next, plaintiff claims error from two instances that she characterizes as introduction of improper and unfairly prejudicial evidence. These claims are better characterized as allegations of attorney misconduct.

## A. MEDICAID BENEFITS

Plaintiff asserts that the trial court allowed defense counsel to state in the jury's presence that plaintiff received Medicaid benefits, but her assertion is not entirely accurate because defense counsel made the statement spontaneously—the trial court did not "allow" the statement. When the statement was made, plaintiff's counsel responded by cautioning defense counsel to "[b]e appropriate." She did not object or otherwise request some type of curative instruction. Accordingly, this issue is unpreserved. See *Reeve v Kinsman Marine Transit Co*, 416 Mich 97, 102-103; 330 NW2d 638 (1982).

"Claims of attorney misconduct are subject to harmless-error review." *Estate of Carlsen v Southwestern Mich Emergency Servs, PC*, 338 Mich App 678, 697; 980 NW2d 785 (2021). "An attorney's comments do not normally constitute grounds for reversal unless they reflect a deliberate attempt to deprive the opposing party of a fair and impartial proceeding." *Id*. (quotation marks and citation omitted). "Reversal is required only when the prejudicial statements reveal a deliberate attempt to inflame or otherwise prejudice the jury, or to deflect the jury's attention from the issues involved." *Id*. (quotation marks and citation omitted). Unpreserved issues are reviewed for plain error affecting substantial rights. *Demski*, 309 Mich App at 426-427.

-12-

Plaintiff claims that she should be granted a new trial because the reference to Medicaid could have caused the jury to make inferences about plaintiff's access to future medical treatment, plaintiff's receipt of taxpayer-funded benefits, and plaintiff's limited financial resources. We disagree. The remark did not suggest "a deliberate attempt to inflame or otherwise prejudice the jury, or to deflect the jury's attention from the issues involved." *Estate of Carlsen*, 338 Mich App at 697 (quotation marks and citation omitted). The trial court instructed the jury that the attorneys' statements are not evidence. The jurors also were instructed that their decision must not be influenced by sympathy, prejudice, or any factor not relevant to the parties' rights. Jurors are presumed to follow their instructions. *Bordeaux v Celotex Corp*, 203 Mich App 158, 164; 511 NW2d 899 (1993). Moreover, a curative instruction, if plaintiff had requested one, would have further mitigated the possibility of any unfair inferences. Plaintiff thus fails to establish plain error arising from attorney misconduct. *Estate of Carlsen*, 338 Mich App at 697; *Demski*, 309 Mich App at 426-427.

## B. CROSS-EXAMINATION OF PLAINTIFF'S EXPERT

Plaintiff also argues that defense counsel denigrated Dr. Anderson by shouting at her, accusing her of lying, and making prejudicial comments about her testimony. "It is well settled that the cumulative effect of an attorney's misconduct at trial may require retrial when the misconduct sought to prejudice the jury and divert the jurors' attention from the merits of the case." *Yost v Falker*, 301 Mich App 362; 836 NW2d 276 (2013).

In *Yost*, the defendant's counsel made improper questions, comments, and arguments to the effect that the plaintiff's counsel was motivated by greed to file an unnecessary lawsuit over a trivial injury. *Id*. at 364-365. This Court remarked that it is usually not possible for the nonoffending party to demonstrate the effect of a statement on a jury; therefore, the nonoffending party is not required to "demonstrate affirmatively" that the statements had a prejudicial effect. *Id*. at 366. However, the facts of *Yost* were unusual because the defendant was "able to affirmatively demonstrate that the statements, though intended to prejudice the jury, did *not* have that effect." *Id*. "During deliberations, the jury sent a note to the trial court asking, 'If we, as a jury, choose no for question number one [whether plaintiff suffered a permanent, serious disfigurement], can we still compensate her?' " *Id*. This Court found that the jury's question "makes it clear that the jury did not conclude that plaintiff was unworthy of compensation or that it should deny compensation to discourage lawsuits." *Id*. If the jury had not sent the note, this Court would have concluded that the defense counsel's improper comments would have entitled the plaintiff to a new trial. *Id*. at 366-367.

In *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278; 602 NW2d 854 (1999) this Court reversed a judgment for the plaintiff on the ground that the defendants were entitled to JNOV. *Id*. at 289. This Court further considered the defendants' argument that the plaintiff's lead counsel engaged in "persistently improper and highly prejudicial conduct that denied defendants a fair trial. *Id*. This Court concluded that the plaintiff's counsel's conduct "was truly egregious" and far in excess of permissible bounds. *Id*. The attorney "continually accused defense witnesses of fabricating" the defense theory that the plaintiff's injuries were caused by a severe and rare reaction to a medication. *Id*. at 290-291. The attorney "insinuated, relentlessly, outrageously, and with no supporting evidence, that while plaintiff lay 'neglected' in the coronary

care unit of the hospital, Dr. Forst 'abandoned' plaintiff to engage in a sexual tryst with a nurse." *Id.* at 291. The lead counsel "repeatedly argued that money and greed were the defendants' prime motivation and the overriding interest guiding their treatment of plaintiff and their desire to cover up their 'mistakes.' " *Id.* The plaintiff's counsel argued that the defendants' greed was the motivating factor in their poor treatment of the plaintiff and their cover-up of mistakes. "Counsel in turn linked these concepts with references to Beaumont Hospital's corporate power and with defendants' ability to hire the 'dream team' to defend them and to raise as many defenses as they wanted no matter how 'preposterous.' " *Id.* "[A]lthough defendants frequently objected to the conduct of plaintiff's lead trial counsel, the trial court more often than not failed to rule on the objections, declined them with little or no instructive comment, or admonished plaintiff's lead trial counsel to no avail." *Id.* at 293. This Court concluded that the trial court failed in its duty "to assure that the parties before it receive a fair trial." *Id.*

In the instant case, defense counsel repeatedly insinuated that Dr. Anderson based her opinion on incomplete records and misrepresented what records she had seen and had in her possession, and he frequently interrupted her. Defense counsel also insinuated that Dr. Anderson changed her position since giving her depositions, leaving him unprepared to respond. He even, at one point, asked her if she was telling a "new lie." Plaintiff's counsel objected on grounds that defense counsel was mischaracterizing Dr. Anderson's testimony and that he was asking questions the witness had already answered. Plaintiff's counsel did not object on grounds that his questioning was unduly argumentative and aggressive, nor did counsel make a record that defense counsel shouted at Dr. Anderson, so nothing in the record supports plaintiff's assertion that this happened. The trial court intervened at various points, and instructed defense counsel not to interrupt Dr. Anderson and to allow her to answer his questions. On this record, we disagree that defense counsel used these tactics with the aim of distracting the jury from the pertinent issues or prejudicing them against Dr. Anderson or plaintiff. The questioning could be described as vigorous or aggressive, but it was focused on the central factual issues of whether Dr. Kissel was negligent in failing to recognize that plaintiff's ER x-ray indicated a ligament injury and whether Dr. Kissel examined plaintiff and took her history before the surgery. Defense counsel's insinuations that Dr. Anderson was unprepared or duplicitous regarding her preparation were directly related to her reliability as plaintiff's expert witness on the issue of the standard of care. We therefore conclude that plaintiff fails to establish that Dr. Anderson's cross-examination deprived plaintiff of a fair trial.

## XI. PLAINTIFF'S ADDITIONAL ISSUES

Plaintiff raises two additional issues that we cannot review because plaintiff failed to make a record of the alleged errors when they occurred at trial.

Plaintiff states in her brief that defense counsel showed Dr. Kissel and the jury a handwritten note that was not produced in discovery or admitted into evidence. Plaintiff cites defense counsel's question to Dr. Kissel, "is this the history and physical" and, after Dr. Kissel stated that it was, counsel asked "what is it that you did on this?" Plaintiff's argument implies that "this" referred to a handwritten note or document which was shown in the courtroom, but not introduced into evidence. However, plaintiff did not object or state for the record that Dr. Kissel was looking at or commenting on unproduced evidence. There is no record of exactly what "this"

-14-

referred to during the questioning at trial. Plaintiff therefore fails to establish a factual basis for this issue and fails to demonstrate plain error affecting her substantial rights.

Plaintiff also argues that defense counsel used peremptory challenges to exclude black members of the jury pool contrary to the United States Supreme Court's decision in *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986). "A *Batson* error occurs when a juror is actually dismissed on the basis of race or gender." *Estate of Carlsen*, 338 Mich App at 688 (quotation marks and citation omitted). "To establish a *Batson* violation, the opponent of a peremptory challenge must first establish a prima facie showing of discrimination." *Id*. at 689 The party asserting the challenge must show that:

> (1) he [or she] is a member of a cognizable racial group; (2) the proponent has exercised a peremptory challenge to exclude a member of a certain racial group from the jury pool; and (3) all the relevant circumstances raise an inference that the proponent of the challenge excluded the prospective juror on the basis of race. [*Estate of Carlsen* 338 Mich App at 689 (citation omitted.).]

"[I]f the trial court determines that a prima facie showing has been made, the burden shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike." *Id*. (quotation marks and citation omitted)." This does not require "articulation of a persuasive reason, or even a plausible one, so long as the reason is not inherently discriminatory, it suffices." *Id*. (quotation marks and citation omitted).

Plaintiff did not raise any objections to defendants' exercise of peremptory challenges during the jury selection and did not establish a record indicating the racial composition of the jury pool or the selected jurors. The transcript also does not identify prospective jurors by race. Moreover, defendants did not have the opportunity to articulate non-racial reasons for their peremptory challenges, and the trial court did not have the opportunity to rule on any aspect of this issue. On the existing record, it is not possible for this Court to review plaintiff's *Batson* challenge.

Affirmed.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Colleen A. O'Brien